[No. B193014. Second Dist., Div. Eight. June 29, 2007.]

CAL-WESTERN RECONVEYANCE CORPORATION, Plaintiff, v.
BARRY REED, Defendant and Appellant;
VALERIE D. REED et al., Defendants and Respondents.

COUNSEL

Walter L. Gordon III for Defendant and Appellant.

Law Offices of Errol Jay Gordon and Arnold Johnson for Defendant and Respondent Valerie D. Reed.

Lori A. Cruz and Fesia A. Davenport for Defendant and Respondent County of Los Angeles Child Support Services Department.

George M. Halimi, in pro. per., for Defendant and Respondent.

OPINION

**BOLAND, J.—**

## SUMMARY

The trial court ordered the distribution of surplus proceeds from a trustee's sale of residential property to satisfy the debtor's obligations for child and spousal support arrearages, a community property equalization payment to the debtor's former wife, attorney fees ordered in a dissolution proceeding, and a loan and attorney fees owed to the debtor's former attorney in this lawsuit. We conclude that:

(1) The distribution of surplus proceeds to satisfy child and spousal support arrearages was proper.

(2) The trial court erred in distributing proceeds to the debtor's former wife to satisfy her claims for a community property equalization payment and for

attorney fees ordered in the dissolution proceeding, because no recorded lien or encumbrance secured those claims, which in any event were discharged in the debtor's bankruptcy proceeding.

(3) The court also erred in distributing proceeds to the debtor's former lawyer, who was retained to assist the debtor in the collection of proceeds from the trustee's sale, because an attorney's lien on the prospective recovery of a client must be enforced in a separate action.

(4) The debtor failed to produce sufficient evidence to support his claim that he was entitled to a homestead exemption applicable when a debtor is physically disabled and unable to engage in substantial gainful employment.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves the appropriate disposition of the surplus proceeds of a trustee's sale of real property. Cal-Western Reconveyance Corporation was the trustee under a deed of trust on the real property executed by trustor Barry Reed. After the trustee's sale on May 25, 2004, and payment of costs and the obligations secured by the deed of trust, surplus proceeds were available to satisfy "obligations secured by any junior liens or encumbrances in the order of their priority." (Civ. Code, § 2924k, subd. (a)(3).) Cal-Western determined a conflict existed among potential claimants to the surplus proceeds, and on February 25, 2005, filed a "Petition and Declaration Regarding Unresolved Claims and Deposit of Undistributed Surplus Proceeds of Trustee's Sale" under the provisions of Civil Code section 2924j. In accordance with the code, Cal-Western provided written notice of its intent to deposit the surplus proceeds ($175,619.76) with the court and that any claims for the funds were required to be filed with the court. The claimants to the surplus proceeds were:

—Barry Reed, the trustor, who was represented by Attorney George M. Halimi.

—Valerie D. Reed, the former spouse of Barry Reed. Valerie claimed she was entitled to:

> —An equalization payment of $13,993.45 ($7,936.00 in principal plus $6,057.45 in accumulated interest), due from Barry to Valerie as specified in the October 15, 1996 judgment of dissolution of their marriage.

—Attorney fees of $3,886.03 ($2,000 principal and $1,886.03 in interest).

—Los Angeles County (County). The county's department of child support services claimed it was currently enforcing a judgment for child support, as well as child and spousal support arrearages, against Barry. The County sought child support arrearages of $31,006.76 and spousal support arrearages of $1061.05, as of March 31, 2005. The County, as judgment creditor, had applied for an abstract of a support judgment on May 13, 1998, which the court issued on May 21, 1998, and which was recorded on June 8, 1998.

On April 14, 2005, the court issued an order allowing Cal-Western to deposit the surplus proceeds, and discharging Cal-Western of further responsibility. At the hearing on April 14, Barry, who was then represented by Attorney Halimi, informed the court he wished to obtain new counsel, and the matter was continued. Four days later, on April 18, 2005, Barry substituted Attorney Halimi out of the case and proceeded to represent himself. On the same day, Attorney Halimi filed a notice of lien in the Cal-Western action. His notice stated that, by virtue of a written fee agreement dated July 26, 2004, Halimi had claims ahead of all others to secure payment for legal services, in an amount equal to 15 percent of the surplus proceeds, plus an advance Halimi made to Barry of $5,000, plus costs and expenses advanced on Barry's behalf of $314.23.

A hearing was held on December 15, 2005. The trial court concluded the County was entitled to recover amounts due under prior orders of the family law court, consisting of $33,309.92 for child support through December 15, 2005, and $1,141.65 in spousal support plus accrued interest. The remaining claims were taken under submission, and the claimants were given an opportunity to present evidence by way of written stipulation or declarations.

On March 14, 2006, the court issued its final order, distributing the surplus proceeds as follows:

—The sum of $33,678.90, "for Claimant Valerie Reed's claim to satisfy child support arrearages through March 14, 2006 . . . ," payable to the County court trustee.

—The sum of $1,162.84, "for Claimant Valerie Reed's claim to satisfy spousal support arrearages through March 14, 2006 . . . ," again payable to the County court trustee.

—The sum of $3,887.12, for Valerie's attorney fee claim, payable to the Law Offices of Errol J. Gordon.

—The sum of $15,424.11, for Valerie's equalization payment claim, payable to Valerie.

—The sum of $8,863.06, payable to George Halimi, for his $5,000 loan, interest on the loan, costs advanced, and quantum meruit for services rendered ($2,725 of the total).

In making its order, the court found that Valerie's claims for child support, spousal support, attorney fees and the equalization payment were not discharged by Barry's bankruptcy, and that Barry was not disabled at the time of the trustee's sale and was therefore not entitled to a $150,000 homestead exemption.

Barry filed a timely notice of appeal from the trial court's order.

## DISCUSSION

■ We conclude that the distribution of surplus proceeds to the County for the satisfaction of child and spousal support arrearages was proper. The trial court erred, however, in distributing proceeds to Valerie to satisfy her claims for the equalization payment and attorney fees, because no recorded lien or encumbrance secured those claims, which in any event were discharged in Barry's bankruptcy proceeding. The court also erred in distributing surplus proceeds to Halimi, because an attorney's lien on the prospective recovery of a client must be enforced in a separate action. We discuss each point in turn.

A. *The distribution to the County to satisfy child and spousal support arrearages was proper.*

Barry argues that the County had no legal right to record the abstract of support judgment, so that the lien is not valid. According to Barry, because Valerie was not a welfare mother and did not assign her child support rights to the County, and because no testimony in the record indicates that Valerie authorized the County to act on her behalf, the district attorney acted without authority when it recorded the abstract in 1998. Barry thus asks us to conclude the abstract did not satisfy the requirements of Code of Civil Procedure section 697.320, subdivision (a), citing *Lawyers Title Co. v. Bradbury* (1981) 127 Cal.App.3d 41 [179 Cal.Rptr. 363] (*Lawyers Title*). We disagree.

Code of Civil Procedure section 697.320 governs, among other liens, a judgment lien for installments under a support judgment. It provides that a judgment lien on real property is created by recording an abstract, a notice of support judgment, or a certified copy of a judgment for child, family, or spousal support payable in installments, with the county recorder. (Code Civ. Proc., § 697.320, subd. (a).) That is exactly what the County did: it recorded an abstract of the support judgment. *Lawyers Title* does not suggest any impropriety in the district attorney's action.

In *Lawyers Title*, the district attorney caused an order pendente lite, which required the husband to pay child and spousal support, to be recorded as a lien against the husband's property under Code of Civil Procedure former section 674.5, a predecessor statute. The order pendente lite provided that the order " 'shall not be served upon anyone not a party to this action' " (*Lawyers Title, supra*, 127 Cal.App.3d at p. 44), and was succeeded by a later interlocutory decree, which was never recorded. The Court of Appeal concluded the district attorney's recording of the pendente lite order was a nullity. The reason, however, was because the pendente lite order expressly stated it was not to be served upon anyone not a party to the action. The court observed that recording is a form of service on or notice to third parties and, by the express terms of the order, was not authorized. The court concluded the district attorney "had no greater authority to cause the order to be recorded than the party whom he purports to represent, to wit, [the wife]." (*Id.* at p. 45.) In short, nothing in *Lawyers Title* supports Barry's claim that the County's abstract of judgment was not validly recorded.

Further, Barry did not raise any objection with the court to the County's authority to file the abstract of judgment. Instead, he objected to the County's accounting and argued he should have the opportunity to conduct discovery to determine "the true balances of these arrears." Accordingly, we reject Barry's claim the County "did not sustain its burden to prove it had authority [from Valerie] to record the lien." Because Barry made no objection to the County's authority, it had no reason to produce evidence on the point. And, although she was not sworn as a witness, the County's attorney represented to the court that the County was authorized to do so.[1] (See also Fam. Code, § 17304 ["local child support agency . . . shall be responsible for promptly and effectively establishing, modifying, and enforcing child support obligations, . . . [and] enforcing spousal support orders established by a court of

---

[1] The County's lawyer stated: "So she [Valerie] hasn't assigned any right to us but she has requested that we enforce on her behalf so we step into her shoes as to enforcement services." When the court enquired, "And you are statutorily authorized to do that?" the County's lawyer replied, "Absolutely."

competent jurisdiction"; Cal. Code Regs., tit. 22, § 116130, subd. (a); see *id.*, subd. (e) ["[a] local child support agency shall prepare and submit for recording a real property lien within 45 days of the date a money judgment or order is received by the local child support agency, a case is opened for enforcement of an existing order or judgment, or an existing order is registered for enforcement"].) Accordingly, the County's abstract of judgment was properly recorded and the distribution of proceeds to the County was likewise proper.

B. *The trial court erred in distributing proceeds to Valerie to satisfy her equalization payment and attorney fee claims.*

The court erred in distributing surplus proceeds to satisfy Valerie's claims for the equalization payment and attorney fees owed by Barry, because (1) no lien or encumbrance secured those claims, and (2) the claims in any event were discharged in Barry's bankruptcy.

1. *No lien or encumbrance supported Valerie's claims.*

Barry argues that, even if the County's lien was valid, it was only effective "to collect the child support owed from the surplus funds," not the spousal support, equalization payment or attorney fees. As to the equalization payment and attorney fees, we agree.

The County's abstract of support judgment created a lien on the judgment identified in the abstract, which was an order dated December 4, 1997. In that order, the court required Barry to pay child support, additional support for childcare expenses, and child support arrearages, all in specified sums per month. The order also stated the court received evidence from Valerie, unrefuted by Barry, that the total amount of child support and spousal support arrears as of April 16, 1997, was approximately $13,000.[2] The order, however, made no reference to attorney fees or to Valerie's equalization payment. Consequently, the abstract of judgment filed by the County is effective as a lien for the collection of child support and spousal support arrearages, but not for other debts not identified in the order.[3] Indeed, the

---

[2] Valerie and Barry waived their respective rights to receive spousal support from the other party in the October 15, 1996 judgment of dissolution of their marriage. The spousal support arrearages arose from an order of October 26, 1994, entered a few weeks after the dissolution action was filed.

[3] Barry also asserts that the abstract was not effective as a lien for the spousal support arrearages, because the judgment shows the trial court continued the matter to November 25, 1997, for both parties to submit evidence on the issue of any arrears. The judgment, however, was entered after the continuance date, on December 4, 1997, so it is obvious that no evidence was submitted to change the conclusion in paragraph 6 of the judgment specifying the total amount of child and spousal support arrears.

abstract of judgment does not purport to cover anything but support. (See *Ellrott v. Bliss* (1983) 147 Cal.App.3d 901, 905 [195 Cal.Rptr. 446] [exclusive method of establishing a lien on real property for child and spousal support payments is pursuant to Code Civ. Proc., § 697.320; wife did not acquire a valid lien when she recorded an abstract of judgment under different statutory provisions, and in any event abstract was inadequate and its recording a nullity because the amount of the judgment could not be ascertained from the abstract recorded]; *Keele v. Reich* (1985) 169 Cal.App.3d 1129, 1131 [215 Cal.Rptr. 756] [omission of required information, known to the judgment creditor, in an abstract of judgment nullified the abstract].)

■ Nor was Valerie's right to her equalization payment and attorney fees secured by any other lien or encumbrance that would justify distributing surplus proceeds to her. Civil Code section 2924k requires that the proceeds of a trustee's sale be distributed in the following order of priority:

"(1) To the costs and expenses of exercising the power of sale and of sale . . . .

"(2) To the payment of the obligations secured by the deed of trust or mortgage which is the subject of the trustee's sale.

"(3) To satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority.

"(4) To the trustor . . . ." (Civ. Code, § 2924k, subd. (a)(1)–(4).)

From the face of the statute, it is apparent that it authorizes distribution of proceeds only to satisfy secured obligations: first, the obligation secured by the trust deed or mortgage that is the subject of the sale, and then the obligations "secured by any junior liens or encumbrances . . . ." (Civ. Code, § 2924k, subd. (a)(3).) Valerie's right to receive her equalization payment and attorney fees was not secured by any recorded lien or encumbrance on the real property or its proceeds. Consequently, Civil Code section 2924k did not authorize the court to distribute proceeds to her, and indeed required the court to distribute proceeds to Barry, as trustor, after all other liens and encumbrances had been satisfied. (Civ. Code, § 2924k, subd. (a)(3), (4).)

Valerie tenders two arguments in her effort to avoid this result.

First, Valerie argues that Family Code section 290 authorized the trial court's award of surplus proceeds to her. Family Code section 290 states: "A judgment or order made . . . pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." (Fam. Code, § 290.) Valerie argues section 290 gives the court broad discretion to fashion orders enforcing Family Code judgments—in this case, the pendente lite attorney fee order, and the judgment of dissolution which called for the equalization payment—and this broad discretion has been recognized in many cases, such as *In re Marriage of Schofield* (1998) 62 Cal.App.4th 131 [73 Cal.Rptr.2d 1] (*Schofield*). While we do not disagree with the proposition that the trial court's discretion to fashion orders enforcing family law judgments is broad, we cannot conclude its discretion extends to ignoring the express terms of Civil Code section 2924k.

Statutory requirements of various kinds exist for establishing and recording liens on real property, including filing abstracts of support judgments, as the County did under Code of Civil Procedure section 697.320, and filing abstracts of money judgments. (See Code Civ. Proc., § 674.) No authority suggests that Family Code section 290 gives the trial court discretion to bypass statutory requirements by, in effect, implying the existence of a recorded lien or encumbrance when there is none. *Schofield* does not suggest otherwise. Indeed, the decision shows that the court's order in that case— which directed a federal office to pay a former wife specified amounts, including arrearages, from her former husband's retirement fund (previously determined to be a community asset)—was "in compliance with applicable federal law and regulations, as well as community property principles . . . ." (*Schofield, supra*, 62 Cal.App.4th at pp. 133, 140 [federal statutes and regulations "clearly allow[ed] the trial court to craft an order which will deal with the problem of collecting arrearages that have been accrued pursuant to a valid judgment" and "[t]hat was done here in accordance with established federal procedure"].) In short, section 290 does not supersede Civil Code section 2924k.

▪ Second, Valerie argues that the December 14, 1994 notice of lis pendens, which she recorded two months before the judgment of dissolution and which Barry never expunged, operates as an "encumbrance" allowing the trial court to distribute proceeds to her.[4] She offers no legal support for this proposition. As Barry points out, a notice of lis pendens does not make the person who recorded it a secured creditor. (See *Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 914 [34 Cal.Rptr.3d 68] ["true purpose of the lis

---

[4] Valerie's notice of lis pendens referred to her dissolution action and stated the action was to determine the ownership of the real property, although Valerie did not hold title to the property, having quitclaimed it to Barry in a deed recorded on December 8, 1994.

pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants"].)

> 2. *In any event, Barry's obligations to pay Valerie the equalization amount and to pay the attorney fees ordered in the dissolution proceeding were discharged in Barry's bankruptcy.*

Even if distribution of surplus proceeds to Valerie were authorized without a recorded lien or encumbrance, Barry's obligations to make the equalization payment and to pay the attorney fees were discharged in his bankruptcy proceeding. The trial court's contrary conclusion was erroneous.[5]

█ Obligations for child and spousal support are not discharged in bankruptcy. (11 U.S.C. § 523(a)(5) [discharge "does not discharge an individual debtor from any debt . . . [¶] . . . [¶] . . . for a domestic support obligation"].) Property settlement payments, however, are dischargeable. (*In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 125 [123 Cal.Rptr.2d 611] ["[p]roperty settlement payments ordered in dissolution proceedings to effect the equitable division of community property, as opposed to payments for spousal or child support, are dischargeable in bankruptcy"].) Barry's obligations to Valerie for the equalization payment and to Attorney Gordon for attorney fees were both listed as claims in Barry's bankruptcy proceeding, and Valerie and Attorney Gordon appear on the certificate of service for the discharge order. The order itself states that Barry was discharged from all debts provided for by the plan, "except any debt . . . in the nature of alimony to, maintenance for, or support of a spouse, former spouse, or child of the debtor in connection with a . . . divorce decree or other order of a court of record, or property settlement agreement, as specified in 11 U.S.C. Section 523(a)(5) . . . ."

Valerie argues that "the effect of the foregoing order was that the Family Law Court orders were not discharged," and were "specifically excepted" from Barry's discharge. Valerie's assertion is erroneous. Debts "in the nature of . . . support" were excepted, but Valerie's equalization payment had nothing to do with child or spousal support. As for Attorney Gordon's fees, Valerie contends that the attorney fee order "was established for purposes of

---

[5] At the hearing, the court stated: "[I]f an order is made in a family law court which in effect constitutes either child support or spousal support . . . , whether it included an equal distribution of the property . . . or whether or not it included attorneys' fees which were incurred with respect to the receipt of spousal or child support, that they are deemed to be in the form of child and spousal support, and, therefore, pursuant to federal bankruptcy statute, are not dischargeable. . . . [T]he court finds that the . . . [equalization payment and] attorney's fees that were awarded to Mr. Gordon were in the form of child and spousal support. They were incurred at or about the time that the initial child and spousal support orders were granted."

obtaining a child support order," but cites to nothing in the appellate record to support that claim. The order in question was filed October 26, 1994, a month after commencement of the dissolution proceeding, and provided for custody and visitation, child support, spousal support, and attorney fees of $2,000, payable at the rate of $200 per month and commencing two months later, on December 10, 1994. The attorney fees ordered were not "payable as child support" nor "payable as spousal support," as neither of those boxes were checked in the order.

Valerie contends *In re Ratcliff* (Bankr.C.D.Cal. 1996) 195 B.R. 466 supports her claim that the attorney fee order "is deemed to be in the nature of child support." It does not. *In re Ratcliff* involved attorney fees incurred during a child custody hearing, and the court held that "a child custody proceeding is always in the nature of child support," so that "any award of attorneys' fees against the debtor becomes a nondischargeable debt pursuant to [11 U.S.C.] Section 523(a)(5)." (*In re Ratcliff, supra*, 195 B.R. at p. 467.) The court explained that the purpose of the custody proceeding was to determine who could provide the best home for the child, so that fees incurred for the custody hearing were in the nature of child support and nondischargeable. (*Id.* at p. 468; see also *In re Chang* (9th Cir. 1998) 163 F.3d 1138, 1140–1141 [debts arising from custody proceeding, for guardian ad litem fees, neutral experts' fees and health professionals' expenses, were "in the nature of . . . support"; California law permitted the compensation of such persons in consideration of the child's best interests, and bankruptcy court correctly concluded the law creating the debt created an obligation of support and was therefore nondischargeable].)

This case did not involve debts arising from a custody proceeding. It involved a prospective order to pay attorney fees that were not designated to be "payable as child support" or "payable as spousal support." Moreover, neither Valerie nor Attorney Gordon appeared in Barry's bankruptcy proceeding to contest the dischargeability of the listed debts. (Cf. *In re Marriage of Sprague & Spiegel-Sprague* (2003) 105 Cal.App.4th 215, 220–221 [129 Cal.Rptr.2d 261] [state court's order characterizing attorney fees as "in the nature of support" was void because attorney failed to obtain relief from automatic stay; attorney never asked the bankruptcy court for a determination that attorney fees were nondischargeable, and "[t]hus, the bankruptcy court's order granting [wife's] discharge in bankruptcy discharged the . . . attorney fees"].) In short, Valerie's claim that the attorney fees were not discharged in the bankruptcy proceeding is without merit.

C.  *The trial court erred when it distributed surplus proceeds to Barry's former attorney for the attorney's loan to Barry, interest, costs and attorney fees.*

In the retainer agreement between Barry and Halimi, Halimi agreed to represent Barry in the collection of proceeds from the trustee's sale. Specifically, Halimi undertook Barry's representation "with respect to his claims against Bank of America and trustees of the deed of trust on [the real property], for collection of proceeds of sale." Attorney fees were "contingent upon the recovery of damages and surplus funds from the sale . . . ," and were set at 15 percent of the recovery. Barry also agreed to pay all costs, and the agreement gave Halimi a lien for attorney fees and costs advanced, and for the $5,000 personal loan, "on all proceeds of any recovery and surplus funds from the sale obtained (whether by settlement, arbitration award, or court judgment)."

While Halimi has a lien on Barry's recovery of surplus proceeds, Barry correctly asserts that the trial court did not have jurisdiction to hear Halimi's lien claims. An attorney's lien on the prospective recovery of a client must be enforced in a separate action, and "[a]ny order or judgment granting the attorney fees made in the main action is in excess of the court's jurisdiction and is void." (*Bandy v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 234 [126 Cal.Rptr. 890] (*Bandy*).) The rule has been stated many times: " 'Appellate courts have consistently held that the trial court in the underlying action has no jurisdiction to determine the existence or validity of an attorney lien on the judgment. [Citations.] The trial court does have fundamental jurisdiction over the subject matter and over the parties. Nevertheless, because the attorney is not a party to the underlying action and has no right to intervene, the trial court acts in excess of its jurisdiction when it purports to determine whether the attorney is entitled to foreclose a lien on the judgment. [Citations.] Nor can the court entertain a motion to terminate the lien. [Citation.] After the client obtains a judgment, the attorney must bring a separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it. [Citations.] An order within the underlying action purporting to affect an attorney's lien is void.' " (*Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 328 [9 Cal.Rptr.3d 912] (*Brown*), quoting *Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1173 [121 Cal.Rptr.2d 532].) Thus, *Brown* explained, "while Brown was entitled to assert his lien *claim* against the proceeds of the VMT judgment by filing a notice of lien in the VMT action, the trial court had no power to determine in that action whether Brown's lien claim was valid or invalid." (*Brown, supra,* 116 Cal.App.4th at p. 329.)

This case presents the precise circumstances described in *Brown*: Halimi was entitled to assert his claim—against any surplus proceeds Barry might

receive in this action—by filing a notice of lien in the action, as he did, but the trial court had no authority to determine the validity of his claim. As *Brown* explains, the rule that the trial court in the underlying action lacks jurisdiction to affect an attorney lien "is founded on the fundamental principle 'that one who is not a party to a proceeding may not make a motion therein.' [Citation.]"[6] (*Brown, supra,* 116 Cal.App.4th at p. 329; see also, e.g., *Bandy, supra,* 56 Cal.App.3d at pp. 235, 234 [in the case of an attorney who has been granted a lien under a contingent fee contract, but who has been discharged prior to the happening of the contingency, "all that remains to be done by him, once the contingency has occurred . . . is to seek an adjudication in an independent action of the reasonable amount of the attorney fees due him"; trial court's order granting lien in the underlying action "was improper and premature as the contingency stated in the contract had not occurred"]; *Hendricks v. Superior Court* (1961) 197 Cal.App.2d 586, 588–589 [17 Cal.Rptr. 364] [because attorney "was not a party in the original action any order or judgment therein giving him attorney's fees is in excess of jurisdiction," and "[s]uch an order or judgment, if made, is void"; "the enforcement of [the attorney's] contractual lien necessarily requires that he obtain his relief through an independent action in which petitioner may set up any defenses she may have"].)[7]

Halimi does not attempt to distinguish the cited authorities, but merely argues that an interpleader procedure was proper, where the trustee held surplus proceeds to which there were conflicting claims, and he was therefore required to file his claim against the proceeds in the Cal-Western action. He also cites no authority for the latter proposition, and it is erroneous. This was not an interpleader action, but was filed in accordance with procedures

---

[6] Limited circumstances exist under which an attorney might be entitled to intervene as a party in a client's action, but such circumstances do not exist here. The Supreme Court has explained: " ' "The right of an attorney to intervene for the purpose of settling a dispute between him and his client as to attorney's fees for services rendered in the same action is limited to those actions wherein, by virtue of the contract of employment between the attorney and client, the former is given *a specific present interest in the subject matter of the action,* which interest might be jeopardized by the client's discharge of his original attorney and the employment of another to prosecute the action." ' . . . [Citation.]" (*Isrin v. Superior Court* (1965) 63 Cal.2d 153, 160 [45 Cal.Rptr. 320, 403 P.2d 728].) The cases "uniformly hold that such an interest is not created by the execution of a contingent fee contract" even where the client expressly grants the attorney a lien to secure his fee. (*Id.* at pp. 160–161.) "The fact that [the attorney] has a right by contract to participate in the proceeds of any judgment that may be obtained does not make him in any true sense of the word a party in interest." (*Id.* at p. 161.)

[7] During the December 15, 2005 hearing, Barry indicated he had "no problem paying the $5,000" loan from Halimi, although he observed that the agreement stated "I will pay him after I receive my proceeds," and that he "[hadn't] received anything." Barry vehemently objected to the claim for attorney fees.

established in Civil Code section 2924j.[8] Halimi was not and could not have been a claimant in Cal-Western's action, as he was not among those persons "with recorded interests in the real property as of the date immediately prior to the trustee's sale . . . ." (Civ. Code, § 2924j, subd. (a).) Indeed, his claim had not yet arisen when Cal-Western filed its petition. In short, we can see no basis upon which to conclude the trial court had any authority to determine Halimi's claim in the Cal-Western action.

D. *The trial court correctly rejected Barry's claim of a homestead exemption of $150,000.*

On January 31, 1995, Barry recorded a homestead declaration on the real property. He contends he was physically disabled at the time of the trustee's sale. The exemption statutes provide that the amount of the homestead exemption is $150,000, if the judgment debtor "is at the time of the attempted sale of the homestead . . . [¶] . . . [¶] . . . [a] person physically or mentally disabled and as a result of that disability is unable to engage in substantial gainful employment." (Code Civ. Proc., § 704.730, subd. (a)(3)(B).) The County's attorney told the court the County received wage assignment payments, one at the end of April 2004, one in July 2004, and others since that date, indicating that Barry was "in fact engaging in employment." When the trial court asked Barry if he was employed at any time during 2004, Barry testified that: "I don't remember the exact date, Your Honor, that I went out on disability but I know at the time my property sold, I was on disability. I have to check my records." The court concluded there was a lack of evidence to substantiate Barry's claim that he was disabled within the meaning of Code of Civil Procedure section 704.730, and limited the homestead exemption to $50,000. (Code Civ. Proc., § 704.730, subd. (a)(1).)

Barry contends that the homestead law is designed for the protection of the homeowner, not the creditor, and the trial court was required, as stated in *Title Trust Deed Service Co. v. Pearson* (2005) 132 Cal.App.4th 168 [33 Cal.Rptr.3d 311], " 'to adopt a liberal construction of the law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor. [Citations.]' " (*Id.* at p. 174.) A "liberal construction of the law and facts," however, does not mean the trial court is at liberty to apply an exemption in the absence of satisfactory evidence that Barry was "unable to engage in substantial gainful employment." (Code Civ. Proc., § 704.730, subd. (a)(3)(B).) We are similarly not at liberty to interfere with the trial court's conclusion on this point.

---

[8] The procedures in Civil Code section 2924j, subdivisions (a) through (d), apply "[u]nless an interpleader action has been filed . . . ." (Civ. Code, § 2924j, subd. (a); see *id.*, subd. (e).)

## DISPOSITION

The order is affirmed in part and reversed in part, and the cause is remanded with directions to enter a new order consistent with this opinion. The parties are to bear their own costs.

Rubin, Acting P. J., and Flier, J., concurred.