Filed 3/30/16  Quality Loan Service Corp. v. Hutton CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| QUALITY LOAN SERVICE CORP., as Trustee, etc., | B259324 |
| Plaintiff, | (Los Angeles County Super. Ct. No. KS017525) |
| v. | |
| TERESA GAMBOA HUTTON, | |
| Defendant and Appellant, | |
| JAMES GAMBOA, | |
| Defendant and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Dan Thomas Oki, Judge.  Affirmed.

Teresa Gamboa Hutton, in pro. per., for Defendant and Appellant.

No appearance for Defendant and Respondent.

\* \* \* \* \* \* \* \* \*

Plaintiff Quality Loan Service Corporation (Quality), as trustee under a deed of trust securing real property located on James Place in Pomona, conducted a nonjudicial foreclosure sale of the property following a default. After the loan and foreclosure costs were paid, there was a surplus of over $100,000 from the sale. Quality gave notice of the surplus funds to the record owners of the property, Pedro Gamboa, Teresa Gamboa, and James Gamboa, but did not receive a claim to the funds. Instead, appellant Teresa Gamboa Hutton, who had no recorded interest in the property, contacted Quality objecting to the distribution of any surplus funds on various grounds. Unsure of how to dispose of the funds, Quality filed a petition with the superior court under Civil Code section 2924j to deposit the funds with the court's clerk, and to have the court resolve any claims to the funds.

Appellant appeared in the action, requesting numerous continuances to prove her claim to the surplus proceeds. Appellant's brother, James Gamboa, also made a claim to the surplus proceeds. The evidence before the trial court established that Pedro and Teresa Gamboa, husband and wife, and their son, James Gamboa, were the record owners of the property at the time of the foreclosure, and that Pedro and Teresa Gamboa had passed away before the foreclosure sale was conducted. The court granted James Gamboa's claim on the basis that he was the only surviving record owner of the property. The court denied appellant's motions for reconsideration and to set aside the judgment.

In this appeal, appellant, who is the daughter of Pedro and Teresa Gamboa, contends that the claim of her brother, James Gamboa, to the surplus funds was untimely; that there were irregularities in the foreclosure process; that any transfer of the property to James Gamboa was not supported by consideration or was otherwise invalid; that the trial court failed to grant her a continuance to carry on her investigation in support of her claim; and that the trial court failed to consider her evidence challenging Quality's authority to foreclose on the property (which was discovered after the trial court entered judgment). Finding no reversible error, we affirm the judgment below.

## BACKGROUND

On October 23, 2013, Quality filed this lawsuit seeking to deposit with the court the undistributed funds of $101,406.80 following its trustee's sale of the James Place property. The petition alleged that title to the property was held by Pedro Gamboa, Teresa Gamboa, and James Gamboa as joint tenants, who were the trustors identified on the deed of trust on which Quality foreclosed. The petition further alleged that Quality had received no claims to the undistributed funds, but that there was a "conflict between potential claimants to the surplus proceeds." The petition further alleged that Pedro, Teresa, and James Gamboa, "as prior owners of the subject property just prior to the foreclosure sale on 07/12/2013, are entitled to any remaining surplus funds."

Quality did not receive a claim from Pedro, Teresa, or James Gamboa, and therefore hired a private investigator to identify possible addresses for them. Notice of the surplus funds was sent to each of them at the addresses identified by the private investigator, but no claims were received. Appellant, however, contacted Quality claiming an interest in the property and objecting to the distribution of surplus funds. She was unable to provide any documents evidencing a recorded interest in the property. Therefore, Quality was unable to determine how the funds should be distributed.

Notice of its petition and intent to deposit surplus funds with the court was given to Pedro, Teresa, and James Gamboa, and to appellant on October 22, 2013. The notice advised the potential claimants that "[p]ursuant to Civil Code § 2924j(d) if you claim an interest to the funds to be deposited you must file a claim with the court within thirty (30) days from the date of this notice . . . ."

On November 1, 2013, the court granted Quality's petition, discharged Quality from further responsibility, acknowledged receipt of the funds from Quality, and set a hearing regarding distribution of the funds for January 15, 2014. Notice of the hearing was given to each of the previous owners at the addresses identified by Quality, and to appellant.

On January 10, 2014, appellant filed a "request for accommodations with disabilities" requesting that the hearing to decide any claims to the surplus funds be

3

continued. That same day, the trial court granted the request and continued the hearing to February 14, 2014. The court also ordered that "[a]ny claims to the funds must be filed with the court within 15 days of this notice of continuance." The notice was mailed to appellant on January 10, 2014, but not to any of the record owners.

On January 27, 2014, appellant submitted a claim to the court, with supporting documents. She included copies of the death certificates for her parents, Teresa and Pedro Gamboa, reflecting that they passed away in 2005 and 2008, respectively. Also included was a 1979 grant deed for the James Place property, evidencing her purchase of the property in 1979. Appellant also submitted a declaration averring that she and her husband purchased the James Place property in 1979, and that she allowed her parents to live there rent free.

On February 14, 2014, the court continued the hearing to March 28, 2014, and requested additional evidence from appellant to support her claim. Specifically, the court requested copies of "the deed and any subsequent transfers." Notice of the continuance was sent to both appellant and to James Gamboa. On March 28, the hearing was continued again, at appellant's request, to April 24, 2014. James Gamboa was given notice of the continuance.

On April 22, 2014, appellant filed copies of the requested documents with the court, including a 2001 grant deed by which appellant and her husband deeded the property to appellant's parents, and to her siblings Margaret and Donald Gamboa, as joint tenants. Also included was a 2002 grant deed, by which Pedro, Teresa, Margaret, and Donald Gamboa deeded the property to Pedro, Teresa, and James Gamboa as joint tenants.

Appellant also filed a memorandum of points and authorities in support of her claim, arguing that she and her husband transferred their interest in the James Place home to her parents in 2001 after experiencing financial hardship from protracted litigation with appellant's former attorney. The goal was to allow appellant "to pull out some equity to live on during the duration of the [lawsuit] and then [for her parents to] give the house back" to appellant. Appellant also made arguments sounding in wrongful

4

foreclosure, claiming that "Pedro and Teresa Gamboa were victims of financial elder abuse by their trustees . . . rending [*sic*] any such instruments void on their face."

On April 24, 2014, James Gamboa made his first appearance in this lawsuit. The court continued the hearing to May 22, 2014, and ordered that "James Gamboa is to submit a claim for surplus funds, by [May 22]. If no claim is submitted, the surplus funds will escheat to the State of California."

On May 16, 2014, appellant filed another accommodation request, captioned "Urgent Request for Continuance Due to Serious ADA Impairments," and on May 19, 2014, the court granted the request and continued the hearing to July 23, 2014.

James Gamboa filed his claim on May 21, 2014.

On July 18, 2014, appellant filed an opposition and objections to James Gamboa's claim. Appellant contended that Mr. Gamboa failed to make a timely appearance in the action, reasoning that he had received notice of Quality's intent to deposit the funds with the court in October 2013. Appellant also repeated many of the arguments made in her memorandum of points and authorities in support of her claim. She also interposed numerous objections to Mr. Gamboa's evidence in support of his claim.

On July 22, 2014, appellant requested a 60-day extension of the hearing. The request stated that she needed more time to prepare a supplemental brief because of her "dire health issues." She did not explain what additional evidence she hoped to present or discuss in her supplemental brief.

The hearing was held on July 23, 2014, and the court took the claims and appellant's request for a continuance under submission. When it issued its ruling, the court denied appellant's request for a continuance, finding "when asked at the hearing what additional relevant facts she might be able to offer if afforded more time, [she] could only state that her investigation of the facts was still ongoing." The court concluded that the evidence before it clearly demonstrated that appellant once held title to the property, but that the property was subsequently transferred to Pedro, Teresa, and James Gamboa as joint tenants, that Pedro and Teresa Gamboa had died before the trustee's sale of the property, and that the only remaining joint tenant at the time of the

5

sale was James Gamboa. The court concluded that James Gamboa's claim was timely, because the court had granted him leave to file a claim by May 22, 2014. Accordingly, the court awarded the surplus proceeds to James Gamboa, finding that "[i]f the court had not allowed James Gamboa to submit a tardy claim, the funds would have escheated to the State of California rather than being awarded to [appellant]."

On July 31, 2014, appellant made a motion for reconsideration under Code of Civil Procedure section 1008. The declaration in support of the motion stated that appellant had contacted various entities involved with the loan on the James Place property, and that none of them had heard of Quality. Appellant posited that her research revealed a "broken chain of title" creating a "question of fact for the jury."

On August 7, 2014, appellant made a motion to set aside and vacate the judgment pursuant to Code of Civil Procedure section 663. The motion argued the court ignored appellant's arguments in opposition to James Gamboa's claim. She urged that her subsequent research demonstrated that Quality was a stranger to the loan and had no standing to bring its petition.

The court considered appellant's motions on September 2, 2014. The court found reconsideration was improper because the judgment had already been entered, and that the motion must be construed as one for a new trial. However, appellant failed to demonstrate that the "new evidence" could not have been discovered with reasonable diligence, or that the new evidence was material. As to the motion to vacate, the court concluded that appellant failed to demonstrate an erroneous legal basis for the court's decision, reasoning that resolution of the issue of Quality's authority to foreclose on the loan would not support appellant's entitlement to the surplus funds.

Appellant filed her notice of appeal on October 1, 2014.

## DISCUSSION

### 1.    Timeliness of James Gamboa's Claim

"Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 (*Moeller*).) Following a

6

nonjudicial foreclosure, section 2924j provides that when proceeds remain after the beneficiary's debt is satisfied and all of the trustee's expenses have been paid, the trustee is required to send written notice to those persons with *recorded* interests in the property entitled to notice prior to the foreclosure sale. (§§ 2924j, subd. (a) & 2924b, subds. (b) & (c).) The notice must inform each such person that: there has been a trustee's sale; he or she may have a claim to all or a portion of the remaining proceeds; he or she may contact the trustee to pursue any possible claim; and before the trustee can act on any such claim, he or she must provide the trustee with certain written information and proof regarding the claim's validity. (§ 2924j, subd. (a).)

"If, after due diligence, the trustee is unable to determine the priority of the written claims received by the trustee to the trustee's sale surplus of multiple persons or if the trustee determines there is a conflict between potential claimants, the trustee may file a declaration of the unresolved claims and deposit with the clerk of the superior court of the county in which the sale occurred, that portion of the sales proceeds that cannot be distributed, less any fees charged by the clerk pursuant to this subdivision." (Civ. Code, § 2924j, subd. (c).) Before the funds are deposited with the clerk, the trustee shall send notice to all potential claimants informing them "the trustee intends to deposit the funds with the clerk of the court and that a claim for the funds must be filed with the court within 30 days from the date of the notice . . . ." (*Id.*, subd. (d).)

Once the surplus funds have been deposited with the clerk, "the trustee shall be discharged of further responsibility for the disbursement of sale proceeds." (Civ. Code, § 2924j, subd. (c).) "Within 90 days after deposit with the clerk, the court shall consider all claims filed at least 15 days before the date on which the hearing is scheduled by the court, the clerk shall serve written notice of the hearing by first-class mail on all claimants identified in the trustee's declaration at the addresses specified therein." (*Id.*, subd. (d).)

Nothing in Civil Code section 2924j "shall preclude any person from pursuing other remedies or claims as to surplus proceeds." (*Id.*, subd. (b).)

7

Appellant argues that Civil Code section 2924j creates a mandatory deadline, requiring that claims must be filed with the court within 30 days of the trustee's notice of intent to deposit funds with the court.[1] (*Id.,* subd. (d).) Appellant has not supported or developed her argument with reasoned citation to authority. She has merely cited to section 2924j, and has not otherwise provided any analysis supporting her claim. We find the argument has no merit.

James Gamboa did not file a claim within 30 days of Quality's notice of its intent to deposit funds with the court. While Civil Code section 2924j, subdivision (d) requires the trustee to inform potential claimants that their claims must be filed with the court within 30 days of the trustee's notice, the trial court has discretion to consider claims filed outside of this 30-day period. The statute provides that the court shall set a hearing to resolve the claims within 90 days of the deposit of the funds, and that the court shall consider claims filed within 15 days of this hearing. (*Ibid*.) This timeline contemplates that the court may consider claims filed more than 30 days after the trustee's notice.

James Gamboa also did not file a claim within 15 days of the date first set for the hearing to resolve claims. However, while Civil Code section 2924j requires that the court consider claims filed by the statutory deadline, it does not limit the court's discretion to consider claims filed outside this timeframe. (*Id.,* subd. (d); see also *Rutherford v. Owens-Illinois, Inc.* (1994) 16 Cal.4th 953, 967 [a trial court generally has the inherent authority to manage its calendar and control proceedings before it]; see also *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527 [trial courts generally have broad discretion in deciding whether to grant continuances].)

---

[1] We note that appellant also received notice of the deposit of funds with the court from Quality, and did not file her claim with the court within 30 days of this notice. It seems she claims to be excused from this requirement because she "had an ADA accommodation extension in time." However, she did not request her "extension" until well after the 30-day period had lapsed.

The court continued the hearing a number of times at appellant's request.[2] As a consequence, Mr. Gamboa was able to make a late appearance and request leave of the court to file a claim. Appellant has not demonstrated that the court abused its discretion. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

## 2.    Other Claims of Error

Appellant makes a multitude of other claims of error on appeal, mostly sounding in wrongful foreclosure. A proceeding under Civil Code section 2924j is not the proper vehicle to adjudicate claims of error relating to the foreclosure process or defects in title. (See *Cal-Western Reconveyance Corp. v. Reed* (2007) 152 Cal.App.4th 1308, 1317-1318.) Instead, section 2924j specifically contemplates that "[n]othing in this section shall preclude any person from pursuing other remedies or claims as to surplus proceeds." (§ 2924j, subd. (b).) Appellant could have asserted these claims in a suit for wrongful foreclosure.[3]

None of appellant's other claims of error are cognizable on appeal because she cannot demonstrate prejudice, since she was not entitled to a judgment in her favor. A judgment is reversible only if any error or irregularity in the underlying proceeding was prejudicial. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475. )

---

[2]    Appellant has not argued that the 90-day timeframe for conducting the hearing is mandatory (most likely because such an argument would concede that the trial court lacked discretion to continue the hearing, as the court did a number of times at appellant's request). (See Civ. Code, § 2924j, subd. (d).) And, in any event, we find the timeframe set forth in the statute is not mandatory; the statute is completely silent about the consequences of the court's failure to consider claims within the period. (See, e.g., *Osman v. Superior Court* (2005) 134 Cal.App.4th 32, 37; *Rutherford v. Owens-Illinois, Inc.*, *supra*, 16 Cal.4th at p. 967.) We can see no legislative intent to usurp the trial court's inherent authority to manage it calendar in the language of the statute.

[3]    We express no opinion whether appellant may have any other claims.

9

In a Civil Code section 2924j proceeding, it is error for the trial court to distribute funds to a claimant with no recorded or secured interest in the subject property. (See *Cal-Western Reconveyance Corp. v. Reed*, *supra*, 152 Cal.App.4th at pp. 1317-1318 [section 2924k, subdivision (a)(3) "authorizes distribution of proceeds only 'to satisfy secured obligations: first, the obligation secured by the trust deed or mortgage that is the subject of the sale, and then the obligations secured by any junior liens or encumbrances. . . .' "].) Here, appellant had no recorded or secured interest in the property. The trial court was without jurisdiction to consider appellant's wrongful foreclosure claims in this section 2924j proceeding, and appellant cannot show prejudice by the court denying a further continuance or disability accommodation because she was not entitled to a distribution of any surplus proceeds.

## DISPOSITION

The judgment is affirmed.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

10