[No. G041480. Fourth Dist., Div. Three. Dec. 11, 2009.]

BANC OF AMERICA LEASING & CAPITAL, LLC, Plaintiff and Respondent, v.
3 ARCH TRUSTEE SERVICES, INC., Defendant and Appellant.

1092

**COUNSEL**

Sam M. Muriella for Defendant and Appellant.

Adleson, Hess & Kelly, Phillip M. Adleson and Lisa J. Parrella for United Trustees Association as Amicus Curiae on behalf of Defendant and Appellant.

Serlin & Whiteford and Kevin P. Whiteford for Plaintiff and Respondent.

**OPINION**

**O'LEARY, J.**—Defendant, 3 Arch Trustee Services, Inc. (Arch), conducted a nonjudicial foreclosure sale that resulted in excess sale proceeds. The sole issue raised on appeal is whether Arch had a duty to search for, verify, prioritize, and distribute the surplus funds to a junior lienholder, Banc of America Leasing & Capital, LLC (BofA), who had recorded a judgment lien against the property owner. We conclude the comprehensive statutory scheme regarding nonjudicial foreclosures (Civ. Code, §§ 2924–2924k)[1] clearly delineates the limited role and duties of a trustee in a nonjudicial foreclosure sale, and those duties do not include the responsibility for searching and finding all possible judgment creditors. Given the recent rise in foreclosures, we appreciate the trial court's concerns regarding the issues posed by BofA in this case. However, the solution is better left to the Legislature as we find no legal or factual support for ignoring the clear statutory rules regarding the limited role of trustees. As will be discussed, there are significant public policies underlying the current legislative scheme. Attorneys for amicus curiae, United Trustees Association, warn a judicially created common law duty, over and above the enumerated statutory duties, will compel trustees to use the far more costly and time-consuming interpleader procedure to determine how and to whom to distribute surplus proceeds. This would defeat the speedy remedy goals envisioned by the Legislature. Currently, junior lienholders have a complete notice and claim procedure outlined in section 2924j that requires no expansion by the judiciary. Accordingly, we reverse the judgment.

I

The facts of this case are undisputed. Christopher T. Wong (Wong) obtained title to real property in Costa Mesa (hereafter the Costa Mesa property). Wong borrowed money to purchase the property and gave the lender two deeds of trust as security for the loan amounts.

Within a year, Wong defaulted on his loan, and the beneficiary commenced nonjudicial foreclosure sale proceedings. Arch substituted in as the trustee under the deed of trust. Arch took all the necessary steps to arrange the sale. It recorded the notice of default (in Dec. 2004) and notice of sale (in Mar. 2005).

Meanwhile, a creditor obtained a judgment against Wong, and recorded an abstract of judgment in June 2005. The creditor subsequently merged with BofA, and it transferred the judgment lien to BofA. The parties agree judgment lienholders, such as BofA, are not automatically entitled to receive

---

[1] All further statutory references are to the Civil Code.

notice of default or sale under the nonjudicial foreclosure statutory scheme. Junior lienholders may request notice pursuant to section 2924b, subdivision (a). BofA did not request this special notice.

At the sale in July 2005, Wong's Costa Mesa property sold for $280,500. This amount satisfied the loan secured by the deed of trust, and after deducting costs and trustee fees, there were excess sale proceeds of $114,797.77. In October, the trustee remitted this amount to Wong.

BofA filed a complaint against Arch for breach of statutory duties. It then filed a motion for summary adjudication of the following issue: Did Arch owe a duty to pay the excess sale proceeds to a junior lienholder (BofA)? The trial court determined the answer was "yes" because the trustee had a "heightened duty" to search public records before the distribution of sale proceeds. The court's ruling on the issue of duty was not determinative of the remaining issues of breach and causation of damages. The remaining case was tried to the court. After considering the testimony of several witnesses, the trial court entered a judgment in favor of BofA, awarding it $114,797.77 plus interest.

## II

■ The interpretation and application of a statute presents a question of law subject to de novo review. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].) "And 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118–1119 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

■ " '[S]ections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citations.] This comprehensive statutory scheme has three purposes: ' "(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." [Citations.]' [Citation.]" (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1249–1250 [26 Cal.Rptr.3d 413] (*Melendrez*).)

■ "The scheme can be summarized as follows. 'Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. [Citation.] The foreclosure process is commenced by the

recording of a notice of default and election to sell by the trustee. [Citation.] After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. (. . . § 2924, subd. (b) . . . .) After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. (. . . § 2924f . . . .) The trustee may postpone the sale at any time before the sale is completed. (. . . § 2924g, subd. (c)(1) . . . .) If the sale is postponed, the requisite notices must be given. (. . . § 2924g, subd. (d).) The conduct of the sale, including any postponements, is governed by . . . section 2924g. [Citation.] The property must be sold at public auction to the highest bidder. (. . . § 2924g, subd. (a) . . . .)' [Citation.]" (*Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 32 [20 Cal.Rptr.3d 37].)

During the foreclosure process, the debtor/trustor is given several opportunities to cure the default and avoid the loss of the property. However, "Once the trustee's sale is completed, the trustor has no further rights of redemption. [Citation.]" (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 831 [30 Cal.Rptr.2d 777].) There is a large body of case law regarding the role and duties of trustees during this beginning phase of the nonjudicial foreclosure sale. It is well settled the trustee's duties regarding the notice of default and sale are strictly defined and limited to what is described in the statutory scheme. (See *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 287 [216 Cal.Rptr. 438, 702 P.2d 596] (*I. E. Associates*).) A brief discussion of this line of authority is helpful as it will relate to our analysis of the trustee's role and duties during the second phase of a nonjudicial foreclosure sale, occurring after the property has been sold.

A.   *Before the Sale*

■   "The rights and powers of trustees in nonjudicial foreclosure proceedings are 'strictly limited and defined by the contract of the parties and the statutes.' (*I.E. Associates*[, *supra*, 39 Cal.3d at p.] 287 . . . .) Thus, a trustee owes no duty to provide notices to any person unless the trust deed or the statute specifically provides for such notice. ([*Ibid.*]; *Perez v. 222 Sutter St. Partners* (1990) 222 Cal.App.3d 938, 943 [272 Cal.Rptr. 119]; see Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:133 at pp. 429–430.) [¶] . . . [S]ection 2924b governs notices of default in nonjudicial foreclosure proceedings. [Citation.] Two subdivisions of section 2924b specify those persons to whom a trustee must mail a default notice. First, section 2924b, subdivision (b)[,] requires a trustee to give notice to (1) the trustor or mortgagor at his or her last known address if different than the address specified in the deed of trust, and (2) to those persons who had recorded a statutory request for notice. Second, section 2924b, subdivision (c)[,] requires a trustee to give notice to several categories of parties, including 'the

successor in interest, as of the recording date of the notice of default, of the . . . interest . . . being foreclosed.' Section 2924b, subdivision (c)(1) requires this additional notice, however, only if the party acquired the interest 'by an instrument sufficient to impart constructive notice of the . . . interest in the land . . . and provided the instrument is recorded in the office of the county recorder so as to impart that constructive notice prior to the recording date of the notice of default and provided the instrument as so recorded sets forth a mailing address which the county recorder shall use, as instructed within the instrument, for the return of the instrument after recording . . . .' " (*Estate of Yates* (1994) 25 Cal.App.4th 511, 517–519 [32 Cal.Rptr.2d 53], fns., italics & citation omitted (*Yates*).)

Section 2924b, subdivision (a), permits "[a]ny person desiring a copy of any notice of default and of any notice of sale" to request these notices. The request can be filed in the office of the recorder "at any time subsequent to recordation of the deed of trust or mortgage and prior to recordation of notice of default." (*Ibid.*) This is sometimes referred to in the case law as a special notice request. It permits junior lienholders, such as those with judgment liens, to request to be added to the trustee's notification list for all the sale proceedings.

A historical perspective of the above notice provisions shows the Legislature gave careful thought to delineating the scope of a trustee's role in the nonjudicial foreclosure process. It clearly intended to strike a balance between the rights and interests of the trustor, the beneficiary, and the trustee. As to the trustee, the Legislature enacted several provisions designed to protect the trustee from unreasonable costs and expenditures, and from becoming embroiled in litigation. Likewise, the courts have respected and upheld the statutorily prescribed limited role trustees, the middlemen, play in foreclosure sales. As our Supreme Court has recognized, there are "persuasive policy reasons which militate against a judicial expansion of those duties." (*I. E. Associates, supra*, 39 Cal.3d at p. 288.)

"Before 1977, trustees were required to give notice only to those persons specified in the security instrument and to those who had recorded a special notice request. [Citations.] In 1977, the Legislature added the requirement that the trustee send notice to the persons identified in section 2924b, subdivision (c). [Citation.] The purpose of this requirement was to 'reduce harshness where interest holders neglect to use the statutory, special request procedure.' [Citation.]" (*Yates, supra*, 25 Cal.App.4th at p. 519.)

The legislative history of the 1977 amendment highlights the balancing and policy reasons the Legislature considered in defining the trustee's role. The Legislature considered and rejected any language automatically requiring

notice to nonsecured junior lienholders. "Assemblyman Paul Bannai introduced Assembly Bill No. 3312, sponsored by the State Bar's Committee on the Administration of Justice. As first introduced . . . the bill proposed a single new subdivision requiring notice 'to each person who [between the recording of the trust deed or mortgage and notice of default] has acquired and then owns, as shown by those public records which impart constructive notice, any right, title or interest in the property encumbered by the deed of trust or mortgage being foreclosed, except easements, licenses, profits, servitudes and liens other than the lien of mortgage which encumbers the property being foreclosed or any portion thereof and which deed of trust or mortgage is subordinate to the deed of trust or mortgage being foreclosed . . . .' . . . (Assem. Bill No. 3312 (1975–1976 Reg. Sess.) § 1, Mar. 4, 1976.)" (*Perez v. 222 Sutter St. Partners, supra,* 222 Cal.App.3d at p. 945, italics omitted (*Perez*).)

"An analysis of the bill as introduced explained: 'The bill is specifically aimed towards protecting parties having an interest in real property but who through ignorance or inadvertence do not request notice in compliance with the provisions of [section] 2924b. *Excluded from the simplified notice procedures would be holders of easements, licenses, profits, servitudes and liens* except junior mortgage liens. According to the sponsors of this legislation, *these latter interested parties are excluded because they normally are deeply involved with the proceedings and have requested notice already or they involve the type of interest which rarely comes forward during a foreclosure proceeding.* In any case, however, the enumeration of these exceptions could make it more difficult for a trustee to determine who is or is not entitled to receive notices.' (Assem. Com. on Finance, Ins. and Commerce, Analysis of Assem. Bill No. 3312 (1975–1976 Reg. Sess.) as introduced Mar. 4, 1976.)" (*Perez, supra,* 222 Cal.App.3d at p. 945, fn. omitted, italics added.)

"An analysis of the bill by the sponsor is similar but explores the trustee's perspective further: 'It is recognized that an additional burden will be placed on the trustees which will require that they get from a title company a more complete trustee's sale guarantee than they now receive and that the trustees would also assume additional risks. The cost of these additional burdens and risks will be added to the trustee's fees and charges. Inasmuch as between 66 [percent] and 85 [percent] of foreclosures commenced result in reinstatement, this additional cost would be passed on to the reinstating owner. However, *to minimize the additional burden and risk* and thus minimize additional costs, junior lien claimants (other than mortgagees and beneficiaries of subsequently recorded mortgages and deeds of trusts) such as *judgment creditors,* tax lien claimants, mechanic's lien claimants, *easement holders and lessees are not protected by this amendment. Experience has shown that judgment lien claimants and holders of tax liens rarely act to protect their interest in the case of a foreclosure of a senior deed of trust;* mechanic's lien claimants

attack the priority of the deed of trust and if not superior to the deed of trust rarely act; while *easement holders and lessees are more closely involved in such a situation*[.] [A]fter weighing the benefits of giving these notices to such persons against the problems involved and the costs to give such notices, A.B. 3312 will not require notices to be sent to them unless they have recorded a request for such notice.' (Italics added.) (Analysis of Assem. Bill No. 3312 (1975–1976 Reg. Sess.), prepared by Harold F. Bradford, Legis. Rep. for State Bar.)" (*Perez, supra*, 222 Cal.App.3d at p. 946, some italics added.)

"The language of the bill ultimately changed in several respects, at least partly in response to a letter to Assemblyman Bannai from Charles J. Tighe, the chairman of the Legislative Committee of the Institute of Trustee's Sales Officers (ITSO). Noting his familiarity with the sponsoring State Bar committee's work through contact with one of its members, Mr. Tighe wrote: [¶] 'The Legislative Committee of ITSO . . . does have some recommendations as to restructuring the bill, although it is not our intention and our recommendations do not attempt to modify the concept of the bill. . . . [W]e believe that the existing construction of the new section wherein notices are to be sent to all parties "who have the right, title or interest . . . except easements, licenses, profits, servitudes and liens . . ." makes it far more difficult for a trustee to determine who is or is not entitled to receive notices. [¶] I am enclosing the Legislative Committee's recommendations to correct the items that I've outlined above . . . . We believe that with these changes that [*sic*] the bill begins to be somewhat more workable from a trustee[']s viewpoint . . . .' " (*Perez, supra*, 222 Cal.App.3d at pp. 946–947, italics omitted.)

"[T]he legislation as finally passed in September 1976 shows a restructuring basically in accord with the suggestions made in the letter . . . . The single subdivision initially proposed was subdivided further to separate out the time and manner of mailing plus the recording and constructive-notice provisions . . . . [¶] Also, and of prime significance here, the formerly broad but *exclusionary* language describing those entitled to unrequested notice (those owning 'any right, title or interest in the property . . . except easements,' etc.) became specific and *inclusive*. The final wording set out, in separate subparts (now subds. (c)(2)(A)–(c)(2)(E)), five classes of those entitled to it. (Stats. 1976, ch. 1149, § 1, p. 5207; fn. 5, *ante*.)" (*Perez, supra*, 222 Cal.App.3d at p. 947, citations omitted.)

"In 1979, the Legislature again amended the statute in an effort to address a variety of continuing abuses in home mortgage procedures. [Citation.] As part of this legislation, the Legislature added the subdivision (b) requirement that the trustee must send notice to the trustor at the address specified in the deed of trust or at the owner's current address if the trustee has actual

knowledge of such address. This amendment reflected the Legislature's dual recognition of the importance of ensuring that homeowners, who may not be living at the address specified in the trust deed, were made aware of a potential foreclosure sale, while at the same time ensuring that trustees have clearly defined responsibilities to avoid time consuming and costly litigation. [Citation.]" (*Yates, supra,* 25 Cal.App.4th at pp. 519–520, italics omitted.)

This amendment to the statutory scheme was examined by our Supreme Court in *I. E. Associates, supra,* 39 Cal.3d at page 283. In that case, the trust deed named the trustor (a partnership) and its address. Unknown to the partnership, its property manager failed to pay mortgage payments and the beneficiary commenced nonjudicial foreclosure proceedings. The trustee gave notice of sale to the address described in the trust deed and to the property manager, but the notices were returned by the post office. The trustee did not attempt to find the address of the partnership, although a reasonable inquiry would have disclosed the address. (*Id.* at p. 285.) Consequently, the trustor did not know about the foreclosure sale. The court affirmed summary judgment in favor of the trustee, holding that absent actual knowledge of the partnership's address the trustee had no obligation to take reasonable steps to find the current address of the defaulting trustor. (*Id.* at pp. 284–289.)

The parties in the case before us agree BofA, a judgment lienholder, was not entitled to automatically receive notice of the default or sale under the statutory scheme. As discussed above, it was a commonly held view that judgment lien claimants rarely come forward to protect their interests in the case of a foreclosure involving a senior deed of trust. It was determined trustees should not be saddled with the additional burden, risk, and costs associated with finding and providing notice to this type of lienholder. Absent a request for special notice, the trustee was not required to notify judgment lienholders of default or sale.

B. *Duties of the Trustee Regarding Distribution of Sale Proceeds*

■ A nonjudicial foreclosure sale is deemed final when the trustee accepts the last and highest bid. (§ 2924h, subd. (c).) "The beneficiary, like any other party, may bid cash, offering more or less than the balance due on the debt. [Citation.] A junior lien . . . will be extinguished at the foreclosure sale unless the successful bidder purchases at a price sufficiently high to pay off both the senior lien and the junior lien. [Citation.]" (*South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1121 [85 Cal.Rptr.2d 647], italics omitted (*South Bay*).) There is a large body of case law devoted to claims made by secured junior lienholders challenging the propriety of the sale in cases where the sale price was insufficient to pay the secured junior lienholders. (*Ibid.*) However, there is scant authority

concerning those rare cases in which there were surplus funds after the sale. Fortunately, sections 2924j and 2924k clearly define the trustee's responsibilities concerning surplus funds.

Section 2924k directs the trustee to apply proceeds from the foreclosure sale: (1) first, to pay the trustee's costs and expenses in exercising the power of sale and conducting the sale; (2) next, to satisfy the debt to the beneficiary (lender); (3) next, to the payment of junior creditors "in the order of their priority"; and (4) the balance, if any, to the trustor (or its successor in interest). (§ 2924k, subd. (a).) It is the trustee's job to sort out the priority and validity of the claims. Section 2924k, subdivision (b), provides the trustee can recoup its costs and expenses in connection with prioritizing and distributing the proceeds. If the costs/fees do not exceed $100 (or $125 "where there are obligations" to be paid to junior creditors), "the fee is conclusively presumed to be reasonable." (§ 2924k, subd. (b).)

█ "When proceeds remain after the beneficiary's debt is satisfied and all of the trustee's fees and expenses have been paid, unless an interpleader action has been filed, within 30 days of execution of the deed after the foreclosure sale, the trustee is required to send written notice to those persons with recorded interests in the property who would have been entitled to receive a copy of the 'notice of default' pursuant to [section] 2024b, [subdivisions] (b) [and] (c) . . . ." (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2009) ¶ 6:535.14, p. 6-104 (rev. # 1, 2008).)

The trustee must notify each person (on the list created by § 2924b, subds. (a), (b), (c)) that he or she may have a claim to all or a portion of the surplus sale proceeds. The trustee's written notice must tell the person how to contact the trustee to pursue any claim, and that he or she must provide written information and proof of the claim. (§ 2924j, subd. (a).) All claims must be received by the trustee within 30 days after the trustee sent the notice. (§ 2924j, subd. (a)(4)(C).)

█ The trustee then must "exercise due diligence to determine the priority of the written claims received by the trustee to the trustee's sale surplus proceeds from those persons to whom notice was sent . . . ." (§ 2924j, subd. (b).) "If there is no dispute as to the priority of written claims to the surplus proceeds, the trustee shall pay the proceeds within 30 days after conclusion of the above notice period. But if the trustee has failed to determine the priority of the claims within 90 days following the 30-day notice period, 10 days later the trustee has to deposit the funds with the court clerk or file an interpleader action." (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions, *supra*, ¶ 6:535.14a, pp. 6-104 to 6-105 (rev. # 1, 2008, 2009); see § 2924j, subds. (b)–(d).)

■ Section 2924j, subdivision (b), provides the statutory scheme is not the sole remedy for claimants: "Nothing in this section shall preclude any person from pursuing other remedies or claims as to surplus proceeds." For example, "A creditor/beneficiary may pursue additional, common law tort remedies against a bidder for misconduct arising out of a nonjudicial foreclosure sale . . . ." (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions, *supra*, ¶ 6:535.14j, p. 6-105; see *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1067, 1069–1071 [78 Cal.Rptr.3d 153]; *Cal-Western Reconveyance Corp. v. Reed* (2007) 152 Cal.App.4th 1308, 1322–1323 [62 Cal.Rptr.3d 244] [trustor's former attorney not entitled to § 2924j notice despite having filed notice of fee lien against trustor's eventual surplus recovery because the lawyer was not a party to action and "not among those persons 'with recorded interests' " immediately prior to trustee's sale; attorney's lien on prospective recovery must be enforced in separate action].) As a general rule "only parties with an interest in the secured loan or in the real property security itself have standing to challenge or attempt to set aside a nonjudicial foreclosure sale[,] . . . [¶] . . . [but] *all* parties to the sale transaction (i.e., those individuals with a 'stake in the outcome') are deemed indispensable and must be joined in the set-aside action." (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions, *supra*, ¶¶ 6:535.15 to 6:535.15a, p. 6-106 (rev. # 1, 2009), some italics omitted; see *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 665–668 [69 Cal.Rptr.3d 87].) In addition, a trustee's or beneficiary's fraudulent conduct during foreclosure proceedings can give rise to a tort action. (*South Bay, supra,* 72 Cal.App.4th at pp. 1121–1122.)

### C. *No Duty to Search for Judgment Lienholders Who Have Not Requested Special Notice*

BofA asserts "there is a clear, mandatory, and unambiguous statutory requirement for foreclosing trustees to pay excess sale proceeds to junior lienholders before trustors." It argues the trial court simply enforced an existing statutory duty. It points to section 2924k's mandate that trustees shall distribute proceeds in the order of priority of: (1) the trustee's costs and expenses; (2) repayment of the mortgage to the primary lender; (3) junior liens in order of priority; and finally (4) the property owner/trustor. BofA argues there is nothing in section 2924k that limits a trustee's duty to junior lienholders who recorded requests to receive notice of default and sale.

BofA acknowledges the body of case law holding the trustee's duties should not be expanded by judicial decisions, and the duties are limited to those established by the Legislature. (*I. E. Associates, supra,* 39 Cal.3d 281.) It argues those cases are distinguishable as those courts did not address or exonerate a foreclosing trustee of the statutory obligation to junior lienholders

under section 2924k. It notes section 2924k was enacted five years after the *I. E. Associates* case, which proves the Legislature sought to codify the trustee's duty to pay junior lienholders.

■   BofA's argument fails because it is based on the faulty premise section 2924k can be read and interpreted in isolation. It is not a stand-alone statute. "The objective of statutory interpretation, of course, is to ascertain and effectuate legislative intent. If the words are clear, a court may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.] At the same time, however, a statute is not to be read in isolation; it must be construed with related statutes and considered in the context of the statutory framework as a whole. [Citation.] A court must determine whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other related provisions." (*Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 986 [44 Cal.Rptr.2d 93].)

As noted above, " '[S]ections 2924 *through* 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citations.]" (*Melendrez, supra,* 127 Cal.App.4th at p. 1249, italics added.) There is no dispute the rights, powers, and duties of trustees in nonjudicial foreclosure proceedings are "strictly limited and defined by the contract of the parties and the statutes." (*I. E. Associates, supra,* 39 Cal.3d at p. 287.)

■   BofA's interpretation of section 2924k renders section 2924j meaningless. Section 2924j, subdivision (a), clearly specifies that if there is no interpleader action, and second, if there are "proceeds remaining" after payments required under section 2924k, subdivision (a)(1) (trustee costs) and (2) (beneficiary/lender lien) have been made, *only then* should the trustee endeavor to determine the priority of the remaining claimants. It cannot be overlooked the Legislature included in section 2924j a specific mechanism for how a trustee must notify, collect claims, prioritize, and distribute the surplus funds to junior lien claims. If the trustee was obligated to also locate, notify, and distribute payments to all possible judgment creditors (described in subd. (a)(3) of § 2924k), the Legislature would have spelled out these additional duties when discussing the trustee's other duties.

■   Section 2924j, subdivision (a)(1) through (3), specifies who shall receive notice and what information must be contained in the notice. Relevant to our case, the persons entitled to receive notice to make a claim are the same persons who were entitled to receive notice of the default and sale (defined in § 2924b, subds. (a), (b)). After receiving the trustee's notice to make the claim, the person has a month to submit a written claim, executed

under penalty of perjury, stating: (1) "The amount of the claim to the date of trustee's sale"; and (2) "An itemized statement of principal, interest, and other charges." (§ 2924j, subd. (a)(4)(A), (B).)

■■■ Since BofA did not request special notice, did not receive notice, and did not make a claim, the trustee had no duty to determine its priority among the other junior liens or distribute funds to it. Section 2924j, subdivision (b), plainly states the trustee need only determine the priority "of the written claims received by the trustee to the trustee's sale surplus proceeds from those persons to whom notice was sent pursuant to subdivision (a)."

BofA argues requesting special notice is difficult, and sometimes impossible, which means our interpretation of the statute will result in a forfeiture of existing rights. The timeframe for requesting special notice is any time subsequent to recordation of the deed of trust or mortgage, and prior to recordation of the notice of default. (§ 2924b, subd. (a).) BofA argues this rule would require judgment lien creditors to continually check and recheck the public record in the 58 California counties where the debtor might acquire real property. It asserts this onerous burden should be contrasted with the trustee's ability to conduct one records search at the time of the foreclosure sale to determine if there were judgment liens entitled to a share of the surplus proceeds. Alternatively, BofA suggests it would be more reasonable to have the trustee interplead the funds.

These may be valid considerations, but these are not the procedures the Legislature selected. Trustees are not statutorily required to search the records for judgment liens after the foreclosure sale. The goal of providing the beneficiary with a quick, inexpensive, and efficient remedy against a defaulting debtor would be thwarted by requiring the trustee to file an interpleader action in every case.

Alternatively, BofA suggests the following provisions read together show there is no requirement that a judgment lienholder record a request for special notice before it is entitled to assert the lien. First, section 2924b provides a request for special notice is an optional, not a mandatory, obligation for judgment creditors. Second, section 2924j clearly states the statutory scheme is not the sole remedy as to surplus proceeds. And finally, section 2924k unequivocally states junior lien creditors (and not just those given notice under § 2924j) must be paid out of surplus foreclosure sale proceeds. But this interpretation overlooks or ignores other relevant sections of the statutory scheme, which is something we cannot do.

The cases and legislative history discussing a trustee's limited duty to notify persons about the default and sale also contemplated and rejected

adding holders of judgment liens, easements, licenses, profits, and servitudes to the list of persons who must be notified. It was determined judgment creditors rarely act to protect their interests in the case of a foreclosure of a senior deed. Creditors closely watching their debtors have the option under section 2924b to request special notice and thereafter their claims will be considered for disbursement of surplus funds.[2] Judgment creditors also have other remedies available, and all property of the debtor (not just real property) is subject to enforcement of a money judgment. Consequently, the request for special notice is entirely optional. A creditor is also free to use ancillary proceedings to aid enforcement of the judgment, such as wage garnishment or contempt proceedings. (8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 2, pp. 32–33.)

BofA's reliance on section 2924j, subdivision (b), is also misplaced. This subdivision clearly provides the statutory remedies to recover surplus funds are not exclusive, and it authorizes common law tort and contract actions when appropriate. BofA sued for breach of the trustee's statutory duties. That the statute permits such an action cannot be viewed as an indication the Legislature intended to impose additional trustee duties not specified in the statutory scheme.

Finally, we have already explained why BofA's argument section 2924k, standing alone, codifies a new set of duties for trustees with respect to junior liens is wrong. When read in context, section 2924k acknowledges a junior lien may be entitled to some or all surplus proceeds, if that person has timely filed a claim and the necessary supporting documentation with the trustee as described in section 2924j.

In yet another alternative argument, BofA points to section 2924k, subdivision (b), as evidence the Legislature anticipated trustees would conduct independent searches for judgment liens, and the Legislature arranged to compensate trustees for their additional investigation. We disagree.

When section 2924k was first enacted in 1990, subdivision (b) provided the trustee could charge for costs and expenses incurred in connection with investigating the priority and validity of claims. In 1999, it was amended to read: "A trustee may charge costs and expenses incurred for such items as mailing and a reasonable fee for services rendered in connection with the distribution of the proceeds from a trustee's sale, including, but not limited to, the investigation of priority and validity of claims and the disbursement of

---

[2] We note there was no evidence to support BofA's claims on appeal that requesting special notice would be difficult or impossible for a person holding a judgment lien. BofA does not suggest it ever attempted to request special notice as provided in section 2924b, subdivision (a).

funds. If the fee charged for services rendered pursuant to this subdivision does not exceed one hundred dollars ($100), *or one hundred twenty-five dollars ($125) where there are obligations specified in paragraph (3) of subdivision (a)*, the fee is conclusively presumed to be reasonable." (*Ibid.*, text added by amendment in italics.) The obligation referred to in paragraph (3) of subdivision (a) of section 2924k related to satisfying "the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority."

Focusing on the above highlighted text, BofA argues the Legislature allotted $125 for the trustee to find and sort out junior liens. It claims the trustee could also use the money to purchase a surplus fund endorsement to protect itself from liability for failing to comply with section 2924k. This argument lacks both factual and legal support.

Section 2924k, subdivision (b), permits $100 in costs for the trustee to sort out its own costs (permitted by § 2924, subd. (a)(1)), and to verify and distribute money owed to the lender secured by the deed or trust or mortgage (permitted by § 2924, subd. (a)(2)). Neither task should be very time consuming or costly, as reflected by the low $100 allotted fee. The Legislature allocated only an additional $25 if there were claims made by junior liens and encumbrances. A mere $25 to determine the balances owed and prioritize those claims seems reasonable. However, $25 to independently investigate, locate, verify, prioritize, and disperse funds to all possible junior liens and encumbrances (§ 2924, subd. (a)(3)), in addition to those who had filed claims pursuant to section 2924j is unreasonable.

The legislative history of section 2924k, subdivision (b), shows the Legislature permitted the additional charge because it acknowledged the trustee would be required to spend a little more time to verify and prioritize the claims submitted by junior lienholders under section 2924j. The Senate Rules Committee explained, "Existing law permits the trustee to collect reasonable fees for services performed from the proceeds of the sale, and presumes that fees not exceeding one hundred dollars ($100) are reasonable. ([§] 2924k.) [¶] This bill would permit the trustee to collect $125 for where the trustee must determine the outstanding balance of obligations secured by any junior liens or encumbrances and their order of priority." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 431 (1999–2000 Reg. Sess.) as amended Aug. 31, 1999, p. 4.) Initially, the committee sought to raise the amount to $150, but it was ultimately set at $125. (*Ibid.*)

BofA did not present evidence regarding the cost associated with the additional duty it proposes. It does not suggest the trustee's search of judgment liens would cost more or less than $25. Instead, BofA argues Arch

could have purchased a surplus funds endorsement from a title company to protect itself from liability for failing to locate all junior lienholders. But there is no evidence in the record indicating this coverage would cost only $25. The argument also ignores that an important purpose of the statutory scheme is to protect trustees, not subject trustees to potential lawsuits from hidden judgment creditors.

Our record contains evidence suggesting it would cost a great deal more than $25 for the trustee to locate, verify, prioritize, and obtain coverage for junior liens and encumbrances that had not filed a claim. Tina Suihkonen, a vice-president and foreclosure trustee having 13 years of experience in the foreclosure industry, testified trustees typically request certain documents from title companies to help them carry out their statutory duties. Based on the information provided by the lender, the trustee asked the title company to perform a beneficiary check and to generate a trustee sale guarantee, containing a list of all the persons entitled to receive notice of the default and sale. She opined this document is "the title company assuring the trustee that all the information that they need to process the foreclosure correctly is included in the trustee sale guarantee." Arch purchased the trustee sale guarantee for $480. Before the sale, Arch purchased a publication endorsement, designated to capture anything that has transpired after the trustee sale guarantee was issued. The last update from the title company is requested the day before the sale (the sale endorsement). Suihkonen stated trustees are not required to purchase a complete report of title, typically costing $1,300.

D. *Constructive Notice?*

BofA argues making a request for a notice of default accomplishes nothing more than recording an abstract of judgment. It points to section 1213, holding that recording an abstract of judgment creates a judgment lien and puts the world on constructive notice of the lien. It argues Arch is charged with constructive notice of the lien, and the trustee was required to look in the records before making its distribution of excess proceeds. We agree with Arch that BofA's argument essentially seeks to eviscerate the entire nonjudicial foreclosure statutory scheme with common law and equitable demands. Sections 2924b and 2924j do not serve to strip judgment creditors of their rights but rather merely set forth a notice and claim process to serve the multilayered goals of having a nonjudicial foreclosure sale. The Legislature may choose to expand the duties of trustees to search the land for judgment creditors before releasing surplus funds, but our interpretation of the current statutory scheme does not create this burden for trustees. Currently, the burden rests with the judgment creditor to keep a careful watch over the debtor, make requests for notice of default and sales, and to submit claims in the event of surplus sale proceeds.

## III

The judgment is reversed. The court's order granting summary adjudication is reversed. Appellant shall recover its costs on this appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.