Filed 5/23/25  San Diego Housing Commission v. Rodriguez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| SAN DIEGO HOUSING COMMISSION, <br><br> Appellant, <br><br> v. <br><br> MICHELE RODRIGUEZ, <br><br> Respondent. | D084268 <br><br><br> (Super. Ct. No. 37-2022-00051166-CU-PT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Affirmed.

Christensen & Spath, Charles B. Christensen, Joel B. Mason and Mark M. Mercer for Appellant.

Golden & Cardona-Loya and Octavio Cardona-Loya II for Respondent.

San Diego Housing Commission (SDHC) appeals two orders pertaining to the disbursement of $397,910.57 in surplus funds from the proceeds of a nonjudicial foreclosure sale:  (1) an order directing to whom, and in what amounts, the surplus funds must be disbursed (the disbursement order); and (2) an order denying SDHC's motion for reconsideration of the disbursement order.  SDHC contends the disbursement order should be reversed because the superior court erred in directing that only some of the surplus funds be

disbursed to it. We disagree with SDHC. As to the appeal of the reconsideration order, SDHC fails to address the issue on appeal, and therefore it is forfeited.

## I.

## BACKGROUND

This case arises from a pair of loans that SDHC made to Michele Rodriguez in 2007: (1) a $210,340 "affordable for sale" (AFS) loan and (2) a $17,966 "first time homebuyer" (FTHB) loan (collectively, the SDHC loans). Each loan was evidenced by a promissory note (collectively, SDHC promissory notes); and each promissory note was secured by a deed of trust (collectively, SDHC deeds of trust) to a residential property (subject property) owned by Rodriguez.

The SDHC deeds of trust each included these three provisions:

> "**4. Prior Mortgages and Deeds of Trust; Charges, Liens.** Owner shall perform all of Owner's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Owner's covenants to make payments when due. Owner shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust.

> "**6. Preservation and Maintenance of Property.** Owner will keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the property. Owner shall perform all of Owner's obligations under the declaration of covenants, conditions and restrictions creating or governing the condominium or planned unit development, the bylaws and regulations of the condominium or planned unit development, and constituent documents."

> "**16. Acceleration, Remedies.** Upon Owner's breach of any covenant or agreement of Owner in this Deed of Trust, . . . Beneficiary, prior to acceleration, shall give

2

notice to Owner . . . specifying: [¶] (a) the breach; [¶] (b) the action required to cure such breach; [¶] (c) a date, not less than ten (10) days from the date the notice is mailed to Owner, by which such breach must be cured; and [¶] (d) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property.

"The notice shall further inform Owner of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Owner to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Beneficiary, at Beneficiary's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law."

The SDHC deeds of trust were not the only deeds of trust recorded as liens against the subject property, nor were they the most senior. Instead they were subordinate to a deed of trust (senior deed of trust) securing a loan (senior loan) by a different lender. In the parlance of item 4 of the afore-quoted deeds of trust, the senior deed of trust was "a lien which has priority over [the SDHC] deed[s] of trust."

At some point in time, The Wolf Firm (Wolf) became the trustee of the senior deed of trust and commenced foreclosure proceedings with respect to it. Those proceedings led to the subject property being sold at a trustee's sale in June 2022. The successful bidder was SDHC, which paid $500,000 to acquire the subject property at the sale. From these proceeds, Wolf deducted amounts to pay off the senior loan and to pay fees and expenses relating to the foreclosure. This left a balance of $397,910.57 in surplus funds.

Wolf invited potential claimants to lay claim to the surplus funds and, in response, received statements of claims from SDHC, from Rodriguez, and

3

from La Boheme Owners Association (La Boheme), a community association for the neighborhood where the subject property is located.

The statement of claim from SDHC indicated a total claim of $934,078.96, comprised of the sum of four line-items, as follows:

| | |
|---|---|
| Unpaid principal on SDHC AFS loan: | $210,340.00 |
| Interest on SDHC AFS loan: | $697,429.50 |
| Unpaid principal on SDHC FTHB loan: | $ 17,966.00 |
| Interest on SDHC FTHB loan: | $   8,343.46 |
| Total: | $934,078.96 |

SDHC's statement of claim did not reveal how the $697,429.50 and $8,343.46 amounts claimed as interest had been derived.  But, as is evident, the total amount that SDHC was claiming exceeded the amount of the surplus funds. For this reason, Wolf petitioned the superior court for leave to deposit the surplus funds with the court, so that the court could resolve the competing claims.  Among the exhibits Wolf included with its petition was SDHC's statement of claim.

The superior court granted the petition.

## II.

## DISBURSEMENT ORDER

### A.    The Claims Filed with the Superior Court

After the surplus funds had been deposited with the superior court, three claimants filed claims with the court.  These were:  SDHC, Rodriguez, and the California Housing Finance Agency (CalHFA).  (La Boheme appears to have abandoned its statement of claim.)

#### 1.    SDHC's Claim

In December 2022, SDHC filed a notice of claim, a brief verified by a SDHC vice president named Sujata Raman, and a declaration signed by Raman (collectively, SDHC claim filings).

4

These filings articulated the $210,340 and $17,966 principal amount of the SDHC loans, they quoted paragraphs 4 and 6 (see *ante*) of the deeds of trust, and they stated that two notices of default had been recorded against the subject property: one with respect to the senior deed of trust, which SDHC said was caused by Rodriguez having failed to make monthly payments due on the loan that deed of trust secured; and the other on behalf of La Boheme, which SDHC said was attributable to Rodriguez having failed to pay community association dues. SDHC argued "Rodriguez's default on [the senior] loan and her failure to pay [La Boheme] dues each separately is a direct violation of the terms and conditions of her loan(s) with SDHC and each independently constitutes a default of her loan(s) with SDHC."

The SDHC claim filings also discussed interest and payment terms for the SDHC loans. Specifically, the Raman declaration stated with respect to the AFS loan, that "[i]n the event of a default, SDHC is entitled to default interest at 10% per annum, compounded annually from the date of the note" and, as to the FTHB loan, that "no monthly payments are required, the interest rate is 3%, and the loan is due in one lump sum in 30 years. However, [it] is due and payable [earlier] in the event of . . . a material breach of . . . any . . . agreement or obligation secured by the property." In addition, the SDHC claim filings referenced the exhibits attached to the Wolf petition—which, as noted *ante*, included SDHC's statement of claim asserting the $697,429.50 and $8,343.46 amounts claimed as interest.

The SDHC claim filings did not include calculations revealing how the amounts SDHC claimed as interest had been computed; nor did they include copies of the SDHC promissory notes or deeds of trust.

### 2. Rodriguez's Claim

The second of the three claimants to file a claim with the superior court was Rodriguez. In January 2023, she filed a notice of claim, a brief

5

accompanied by her verification, a declaration with her signature, and a request for judicial notice to which was attached copies of the two SDHC deeds of trust and a complaint alleging wrongful foreclosure in a lawsuit she had filed two months earlier against Selene Finance, L.P. (Selene). (We shall refer to these documents, collectively, as the Rodriguez claim filings).

In the wrongful foreclosure complaint, Rodriguez alleged that until about April 2022 she had been making mortgage payments in compliance with the terms of a trial mortgage modification plan that mortgage servicer Shellpoint Mortgage Servicing (Shellpoint) had provided to her. She further alleged in the wrongful foreclosure complaint that, in or about April 2022, she had been informed that Selene replaced Shellpoint as the servicer of the senior loan and that Selene had acknowledged and promised to follow-up on defects in the servicers' accounting for her payments. In support of these allegations the wrongful foreclosure complaint quoted from an e-mail Rodriguez had allegedly received from a Selene representative, acknowledging that Rodriguez in fact "ha[d] been paying faithfully," that there was an "error" or "discrepancy" in the records, and that that error or discrepancy would be "adjust[ed]." Thus, Rodriguez alleged in her claim filings, she "was . . . not materially in breach of any . . . condition and had not failed to perform any other material requirement of the loan agreement that would . . . justify the foreclosure."

In her brief and declaration, Rodriguez quoted paragraph 16 (see *ante*) of the SDHC deeds of trust, pertaining to notice requirements in connection with the acceleration of interest and said that SDHC had not sent her any acceleration notice. As a result, she said, she had been prevented from asserting the nonexistence of a default in court notwithstanding the fact that she "*could* have challenged the alleged default . . . given [she] was current on

6

making payments on [the senior loan pursuant to the] trial loan modification." "By failing to provide the requisite notice," Rodriguez argued, "SDHC [had] waived its right to accelerate the FTHB and AFS loans and [to] demand payment in full under them."

### 3. CalHFA's Claim

The third of the three claimants to file a claim with the superior court was CalHFA. In May 2023, it filed a notice of claim along with a brief in which it claimed that $33,800 was due and owing to it pursuant to yet another deed of trust.

## B. The Superior Court's Ruling

At a hearing that occurred in December 2023, 11 months after Rodriguez had filed her claim with the superior court, counsel for SDHC and counsel for Rodriguez attended a hearing, the minute order from which says they "agree[d] this matter may proceed *on the filed papers* without the need of trial." (Italics added).

Then two months after that, in the lead-up to a February 2024 hearing, the superior court issued a tentative ruling denying SDHC the interest it had claimed and ordering the $397,910.57 in surplus funds to be disbursed as follows:

| | |
|---|---|
| To SDHC, for the AFS loan: | $210,340.00 |
| To SDHC, for the FTHB loan: | $ 17,966.00 |
| To CalHFA: | $ 33,800.00 |
| To Rodriguez: | $135,804.57 |
| Total: | $397,910.57 |

In arriving at this tentative disposition of the surplus funds, the superior court stated:

> "The main dispute concerns whether [SDHC] is entitled to *accelerated* amounts of its two loans. The Court agrees with [Rodriguez] that [SDHC] has not sufficiently demonstrated it is entitled to the accelerated amounts of its

7

two loans. SDHC did not dispute Rodriguez's claim [that] SDHC did not provide her with the acceleration notice required under the Deed of Trust, precluding Rodriguez from asserting the nonexistence of a default in court. SDHC did not provide any documents or legal authority/analysis showing how the amounts are accelerated. Thus, SDHC is only entitled to the amounts claimed without acceleration."

At oral argument, SDHC's counsel requested a continuance to enable it to brief an issue that it evidently had not seen fit to brief earlier, namely the no-notice-of-acceleration issue that Rodriguez had raised 13 months earlier. SDHC's counsel also offered to show the court the two SDHC promissory notes, which had not been included among the filed papers; and he referenced a clause in those notes that he characterized as a waiver of Rodriguez's right to certain types of notice. Concluding his argument, he asserted: "It is imperative that we have an opportunity to fully brief these items."

The court responded with the observation that "[e]verybody [had] agreed everything was ready to go" when the hearing date was set months earlier, "so why are we having this discussion now?" Then it denied the request and confirmed its tentative ruling.

SDHC timely appealed.

## C.    Analysis

### 1.    Civil Code Section 2924k

The order of priority for the distribution of proceeds from a nonjudicial foreclosure sale conducted pursuant to a power of sale in a deed of trust is governed by Civil Code section 2924k. (See *Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.* (2009) 180 Cal.App.4th 1090, 1096 [characterizing Civil Code sections 2924 through 2924k as " ' "a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust" ' "].)  Pursuant to

8

subdivision (a) of section 2924k, such funds are to be distributed "in the following order of priority:"

> "1. To the costs and expenses of exercising the power of sale and of sale, including the payment of the trustee's fees and attorney's fees permitted pursuant to subdivision (b) of Section 2924d and subdivision (b) of this section.

> "2. To the payment of the obligations secured by the deed of trust or mortgage which is the subject of the trustee's sale.

> "3. To satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority.

> "4. To the trustor or the trustor's successor in interest. In the event the property is sold or transferred to another, to the vested owner of record at the time of the trustee's sale."

In the present situation, the original $500,000 in sale proceeds have been whittled down to $397,910.57 via application of levels one and two of this order of priority. Level three implicates the claims of SDHC and CalHFA because their liens are junior in priority to the lien of the senior deed of trust (i.e., the deed of trust on which Wolf foreclosed); and, as among those claims, CalHFA has conceded that the lien of its deed of trust is junior in priority to the liens of the SDHC deeds of trust. As for level four, it implicates Rodriguez's claim, as she is the trustor of the (now foreclosed) deed of trust from which the sale proceeds derive.

## 2. Standard of Review

SDHC contends the court erred in denying it interest on the SDHC loans, and in directing that less than the entirety of the $397,910.57 in surplus funds be disbursed to it. In support of this contention, it argues that the disbursement order should be reviewed de novo because the reasoning in

9

that order is exclusively a matter of statutory construction and of interpretation of contracts, unaided by resort to extrinsic evidence. In keeping with this position it asserts, variously, that "there is no dispute that Rodriguez defaulted on her senior lien obligation," that the absence of such a dispute is demonstrated by the fact that "the subject property was sold at a foreclosure sale," and that "the parties agree that Rodriguez defaulted on her SDHC notes" (i.e., by virtue of having defaulted on the senior lien obligation). But these assertions are at odds with the position Rodriguez took in her claim filings in which she emphatically disputed the notion that she had defaulted on the senior loan. Hence we cannot agree with SDHC's position regarding the standard of review.

For her part, Rodriguez contends the substantial evidence standard of review should apply because the disbursement order was premised on a finding that SDHC had failed to sustain its burden of proof. She is correct in her assertion that the superior court premised the disbursement order on a finding that SDHC had failed to sustain its burden of proof. But it does not follow that the substantial evidence standard of review should apply.

In resolving the parties' clash with regard to the applicable standard of review, we draw insight from the recent words of Justice Huffman of this court: "Typically, when the trier of fact determines that a party has not satisfied its burden, that party is not entitled to a 'do over' on appeal where the appellate court looks at all the evidence and arguments anew and substitutes its judgment for that of the fact finder below. Rather, a party challenging a determination that it did not satisfy its burden of proof faces a much more arduous undertaking. ' "In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize

10

the failure-of-proof issue as whether substantial evidence supports the judgment. [Rather],the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citation.] Expressed more tersely, 'when an appellant challenges a trial court's conclusion that the appellant failed to carry its burden of proof at trial, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." ' [Citation.] 'This is "an onerous standard" [citation] and one that is "almost impossible" for a losing [party] to meet.' " (*People v. Field* (2024) 106 Cal.App.5th 132, 158 (*Field*); see also *San Diegans for Open Government v. Fonseca* (2021) 64 Cal.App.5th 426, 436.)

      3.     **Sufficiency of the Evidence**

In applying the standard of review just discussed to the February 2024 disbursement order, we decline the invitation, implicit throughout SDHC's opening brief, to consider evidence that was not before the court when the order issued. In other words, we do not consider the *additional* evidence SDHC submitted in support of its *subsequent* motion to *reconsider* the disbursement order. This is for the obvious reason that such later-filed evidence was not before the court when it issued the disbursement order.

Applying the standard of review set forth above, we conclude it is evident that the evidence SDHC presented in the run-up to the February 2024 hearing was not "uncontradicted and unimpeached," nor was it "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding," such that it "compels a finding in favor of the appellant as a matter of law." The evidence was not "uncontradicted and unimpeached" inasmuch as the assertions in the SDHC claim filings that Rodriguez was in default of the senior deed of trust because a notice of

11

default had issued as to that deed of trust[1] (see *ante*) *were contradicted* by Rodriguez's declaration that she "was current on making payments . . . under [the] trial loan modification." And of course, if Rodriguez were not in default, then the acceleration clause of the SDHC deeds of trust would not be implicated.

Additionally, Raman's representations regarding the interest payment terms of the SDHC promissory notes and her assertions as to what amounts of interest were due—unaccompanied by copies of the promissory notes themselves or by calculations revealing how the asserted amounts of interest had been computed—were not "of such a character and weight as to leave no room for a judicial determination that [SDHC's evidence] was insufficient to support a finding" in its favor. (See *Field, supra,* 106 Cal.App.5th at p. 158; see also Evid. Code § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."]; *Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1108 [provision in Evid. Code "permit[ting] the introduction of

---

[1] We note that neither issuance of a notice of default nor completion of a trustee's sale is proof that a debtor is actually in default; nor does it necessarily follow that a default under one deed of trust qualifies as a default under another deed of trust. For example, paragraph 4 of the SDHC deeds of trust (quoted *ante*) does not require an owner to perform all of her obligations under *any* other deed of trust; instead it requires her to perform all of her obligations under any other deed of trust *that "has" or "may attain a priority* over this deed of trust" (italics added; see *ante*). Harkening to SDHC's assertion that Rodriguez defaulted on her obligations to La Boheme, we have seen neither evidence nor argument to suggest that a lien premised on obligations to La Boheme (as distinguished from the lien of the senior deed of trust on which Selene foreclosed) had priority over the liens of the SDHC deeds of trust.

'otherwise admissible secondary evidence' to prove the contents of a writing . . . does not excuse the proponent from complying with . . . the hearsay rule"]; *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 593–595.)

For the reasons just discussed, we conclude the superior court did not err in directing that $33,800.00 of the surplus funds be disbursed to CalHFA, and that $135,804.57 of the surplus funds be disbursed to Rodriguez, rather than to SDHC.

## III.

### ORDER DENYING MOTION FOR RECONSIDERATION

In March 2024, following entry of the disbursement order, SDHC filed a motion for reconsideration, pursuant to Code of Civil Procedure section 1008, subdivision (a), in which it presented evidence and arguments that appear to have been available to it prior to the hearings discussed *ante*.

The superior court denied the motion and cited, among the bases for the denial, the fact that SDHC had not supplied a satisfactory explanation for its failure to furnish the additional material in advance of the previous hearing. (See generally Code Civ. Proc. § 1008, subd. (a); *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 [for trial court to grant reconsideration based on "new or different facts, circumstances, or law," under section 1008, subdivision (a), the party seeking reconsideration "must provide a satisfactory explanation for failing to offer the evidence in the first instance"; "facts of which the party . . . was aware at the time of the original ruling [will] not [be deemed] 'new or different.' "]; *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 213–215; *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 692, fn. 6 [rejecting as "patently insufficient" an argument that trial court should reopen issue so

that it could consider evidence that movant had "not th[ought] . . . was necessary at the first hearing"].)

Although SDHC timely appealed the superior court's denial of its motion for reconsideration, its brief on appeal is bereft of any argument with respect to that denial.  Thus we deem any such argument forfeited.  (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 [" 'This court is not inclined to act as counsel [for] appellant and furnish a legal argument.' "].)

## IV.

## DISPOSITION

The judgment is affirmed.  Rodriguez is entitled to costs on appeal.



KELETY, J.


WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

14