Filed 12/26/25  Turner v. BBV Profit Sharing Plan CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| BERNICE TURNER,<br><br>    Cross-complainant and Appellant,<br><br>v.<br><br>BBV PROFIT SHARING PLAN et al.,<br><br>    Cross-defendants and Respondents. | A170257<br><br>(San Mateo County<br>Super. Ct. No. 22CIV04777) |

This case arises out of the nonjudicial foreclosure of Michael Turner's 50 percent interest in property located in East Palo Alto (the "Property"). Appellant Bernice Turner,[1] Michael's sister, owns the other 50 percent interest in the Property but was not a party to the loan that was the basis for the foreclosure.

The third parties who purchased Michael's interest in the Property at the foreclosure sale brought a partition action.  Bernice filed a cross-complaint in the partition action challenging the foreclosure.  She alleged

_____

[1] As Bernice and Michael share the same last name, we shall refer to them by their first names in the interest of convenience and clarity only.  We intend no disrespect.

1

claims against cross-defendants BBV Profit Sharing Plan (BBV), Milestone Financial, LLC (Milestone), Mortgage Lender Services (MLS), Bear Bruin Ventures, Inc., William Stuart, Zoe Hamilton, and MERS Link 4 (collectively, "cross-defendants").

The trial court sustained cross-defendants' demurrers without leave to amend in part on the ground that Bernice lacks standing to assert claims challenging the foreclosure. Bernice appeals the judgments entered in favor of cross-defendants. We agree with the trial court that Bernice lacks standing and affirm the judgments.[2]

## I. BACKGROUND[3]

According to Bernice's operative cross-complaint, Bear Bruin Ventures, Inc. is doing business as Milestone, and Milestone is doing business as MERS Link 4. Stuart is the owner and director of BBV and the president of Bear Bruin Ventures, Inc. Hamilton is a licensed real estate salesperson employed by Stuart.

In 2013, Bernice obtained full title to the Property. The following year, she executed and recorded a grant deed gifting a 50 percent interest in the

---

[2] We acknowledge that the potential sale of her residence in the partition action has undoubtedly caused Bernice a lot of heartache. But while we sympathize with Bernice, she has not met her burden as the appellant to demonstrate that she has standing to challenge the foreclosure of Michael's 50 percent interest in the Property.

[3] On March 3, 2025, Bernice filed a motion to consolidate this appeal with the appeal in *Turner v. BBV Profit Sharing Plan*, case No. A168874, for purposes of oral argument, or, in the alterative, to assign both appeals to the same appellate panel "to promote judicial efficiency and ensure consistent consideration of the overlapping factual and legal issues." We agree that argument should be calendared for the same date and the appeals assigned to the same panel, and we will issue the opinions simultaneously to ensure a uniform and consistent decision. However, we deny the motion to consolidate

2

Property to Michael.  They held title in the Property as tenants in common (or cotenants).

In 2017, Michael borrowed $220,000 from BBV.  The loan was secured by a deed of trust encumbering only his interest in the Property.  BBV later assigned the note and deed of trust to MERS Link 4.

In December 2021, after Michael defaulted on the loan, a notice of default and election to sell was recorded against his interest in the Property, commencing the nonjudicial foreclosure process.  (See Civ. Code, § 2924, subd. (a); *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830,  disagreed with on other grounds in *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1256, fn. 26.)  MLS was the foreclosure trustee.

In 2022, third parties purchased Michael's 50 percent interest in the Property at the foreclosure sale.  The third party purchasers then filed a partition action.

In January 2023, Bernice filed a cross-complaint in the partition action against the third party purchasers and cross-defendants.  Bernice asserted several claims, including fraud, negligence, wrongful foreclosure, and violation of the Unfair Competition Law (UCL; Bus & Prof. Code, § 17200 et seq.).  Bernice alleged that cross-defendants "concealed" the foreclosure from

because the appeals do not involve common issues.  (See *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 165, fn. 3.)  One appeal is from an order granting summary judgment in an action challenging BBV's conduct in making the loan for Michael, while the other appeal is from an order sustaining a demurrer to a cross-complaint challenging the subsequent foreclosure.  (See *Sampson v. Sapoznik* (1953) 117 Cal.App.2d 607, 609 [denying motion to consolidate appeal from judgment with appeal from an order granting a motion to correct the judgment because "the question as to whether the trial court exceeded its jurisdiction or abused its discretion has [no] relation to the issues to be raised in attack or defense of the judgment on appeal"].)

her and did not disclose the "details of the foreclosure," and that they failed to offer Michael protections under the Homeowner Bill of Rights (HBOR), which applied because the Property was owner-occupied.

BBV and MLS separately demurred to the cross-complaint. The trial court sustained their demurrers on the grounds that Bernice failed to state a cause of action and that she lacked standing to challenge the foreclosure and cross-defendants' alleged non-compliance with the HBOR. The court granted Bernice leave to amend.

Bernice filed a first amended cross-complaint (FACC) asserting claims against cross-defendants for negligent misrepresentation, negligence, and violation of the UCL. She alleged that in connection with the foreclosure, cross-defendants falsely represented that the Property was not owner-occupied in order to avoid the application of Civil Code[4] section 2923.5, a part of the HBOR. She further alleged that by recording documents stating that the Property was not owner-occupied and by failing to contact her before foreclosing on the Property, cross-defendants violated the "California Financial Code (§50500 *et seq.*)," the Truth in Lending Act (TILA; 15 U.S.C. § 1601 et seq.), the HBOR, and the Real Estate Settlement and Procedures Act of 1974 (RESPA; 12 U.S.C. § 2601 et seq.). Her UCL claim was based on the same alleged fraud and statutory violations. Attachments to the FACC included the recorded notice of default and election of sale.

BBV, Stuart, Hamilton, Bear Bruin Ventures, Inc., and Milestone jointly demurred to the FACC. They requested judicial notice of, among other materials, the recorded grant deed from Bernice to Michael and the recorded deed of trust from Michael to BBV. In her opposition to the

---

[4] Undesignated statutory references are to the Civil Code.

4

demurrer, Bernice requested judicial notice of the recorded trustee's deed upon sale conveying Michael's interest in the Property to the third party purchasers at the foreclosure sale.

MLS also demurred to the FACC and requested judicial notice of the recorded trustee's deed upon sale.

The trial court granted the requests for judicial notice of the recorded documents and sustained cross-defendants' demurrers, concluding that Bernice lacked standing to assert her causes of action because her claims were based on "wrongful acts against or breaches of duty owed to a borrower." The court further concluded that the FACC failed to adequately allege causes of action for negligent misrepresentation and negligence. The court denied Bernice leave to amend.

## II. DISCUSSION[5]

### A. Standard of Review

When a demurrer is sustained by the trial court, we review the complaint de novo to determine whether the challenged pleading states facts sufficient to constitute a cause of action. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

---

[5] We grant Bernice's unopposed motion for judicial notice of the record of Appeal No. A168874, including the appellate briefs filed by the parties.

A trial court has discretion to sustain a demurrer with or without leave to amend. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) If we determine that the plaintiffs have met their burden to demonstrate that a reasonable possibility exists that the defect can be cured by amendment of the pleading, then the trial court has abused its discretion in denying leave to amend and we reverse the denial. (*Ibid.*) Otherwise, we affirm the judgment on the basis that the trial court has not abused its discretion. (*Ibid.*)

Standing is the threshold element required to state a cause of action and, thus, lack of standing may be raised by demurrer. (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 813, disapproved of on other grounds in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337.) To have standing to sue, a person must " 'have a real interest in the ultimate adjudication because [she] has [either] suffered [or] is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' " (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 707.) When a party lacks standing, the action must be dismissed, unless the complaint can be amended by substituting a party who has standing. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004–1011.)

### B. Bernice Has Forfeited Her Financial Code Claim.

In support of Bernice's negligence cause of action, the FACC alleged that cross-defendants violated, among other provisions, "Financial Code (§50500 et seq.)." Those sections provide for enforcement of code provisions, rules, and orders through action by the Commissioner of Financial Protection and Innovation; they do not contain any language suggesting that a private right of action is available. Cross-defendants, therefore, argued below and again before this court that no private right of action may be asserted under

6

Financial Code section 50500 et seq. (See *Lagrisola v. North American Financial Corp.* (2023) 96 Cal.App.5th 1178, 1196 [no private right of action under the Financial Code " ' " 'unless the statutory language or legislative history clearly indicates an intent to create a private right of action' " ' "].)

Bernice has not briefed this issue, though she was on notice of cross-defendants' position. Nor does she address her Financial Code claim in her appellate brief. We therefore consider the issue forfeited by Bernice, and any claim of error is deemed abandoned with respect to her Financial Code claim. (See *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [appellants waive issue on appeal by failing to support it with argument or citation of authority]; *Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 9, fn. 2 [on appeal from a judgment after an order sustaining a demurrer, unaddressed causes of action are abandoned].)

Consequently, we affirm the demurrer ruling as to Bernice's negligence cause of action to the extent it is based on cross-defendants' alleged violations of Financial Code section 50500 et seq. because Bernice has not borne her burden of showing error on appeal. (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.)

### C. Bernice Lacks Standing to Assert Her Remaining Tort Claims.

Aside from her Financial Code claim, Bernice's causes of action for negligent misrepresentation and negligence are predicated on allegations that cross-defendants failed to contact Bernice and notify her of her "options" prior to foreclosing and misrepresented the Property as not owner-occupied, thereby violating TILA, RESPA, and the HBOR. The trial court sustained cross-defendants' demurrers to these claims on the ground that Bernice lacked standing to sue, because the FACC's allegations and the judicially-

7

noticeable facts established that Bernice was not a borrower on the loan that served as the basis for the foreclosure. We agree with the trial court.

To have standing, a plaintiff must have "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Dominguez v. Bonta* (2022) 87 Cal.App.5th 389, 413.) A tort—such as fraud or negligence— " 'involves a violation of a *legal duty*, imposed by statute, contract, or otherwise, owed by the defendant to the person injured. Without such a duty, an injury is "damnum absque injuria"—injury without wrong.' " (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1527.) Neither TILA, RESPA, nor the HBOR impose duties to disclose or notify owed to non-borrower cotenants.

TILA requires creditors to provide borrowers with certain disclosures on matters like finance charges and borrower's rights. (15 U.S.C. §§ 1631, 1632, 1635, 1638.) Thus, TILA gives standing to a person to whom the duty of disclosure is owed, which would be the borrower. (See *Johnson v. First Fed. Bank of Cal.* (N.D.Cal., Jul. 8, 2008, Nos. C 08–01796 PVT, C 08–00264 PVT) 2008 U.S.Dist. Lexis 111020, at *8–9 [a party not named in the loan papers is not a "consumer" under TILA and thus lacks standing to bring a TILA claim]; *Carter v. Bank of America Corp.* (E.D.Cal., May 20, 2011, No. Civ S-10-1238 JAM DAD PS) 2011 U.S.Dist. Lexis 54392, at *5 ["TILA confers a statutory ' "right of action only on a borrower in a suit against the borrower's creditor" ' "].)

Under RESPA, mortgage servicers and lenders are required to provide certain information to a "borrower" or loan applicant. (12 U.S.C. §§ 2601, subd. (a), 2604, subd. (d), 2605, subds. (a), (b), 2609, subds. (b), (c).) As such, "[c]ourts have uniformly barred non-borrowers from asserting RESPA

claims." (*Aldana v. Bank of America, N.A.* (C.D.Cal., Nov. 26, 2014, CV 14-7489-GHK (FFMx)) 2014 U.S.Dist. Lexis 166460, at *8 [collecting cases].)

Similarly, the HBOR "was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options.' . . . (§ 2923.4, subd. (a).)" (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.)  To that end, section 2923.5, one of the statutes Bernice relies on, requires a loan servicer to contact the "borrower" to discuss certain information with them, such as "options for the borrower to avoid foreclosure."  Section 2924.17, the other statute cited by Bernice, provides that foreclosure documents, such as notices of default, must "be accurate and complete and supported by competent and reliable evidence."  (§ 2924.17, subd. (a).)  Only a "borrower" may bring an action for violation of section 2924.17.[6]  (§ 2924.12, subds. (a)(1), (b).)  Moreover, the HBOR defines "owner-occupied" as the property that is "the principal residence of the *borrower*."  (§ 2924.15, italics added.)[7]

---

[6] Bernice also relies on section 2924, which concerns the exercise of a power of sale and addresses the recording of the notice of default required to initiate the nonjudicial foreclosure process.  Bernice has not identified a statute that creates a private right of action for violation of section 2924, and that statute is not among those identified in section 2924.12, which expressly creates a private right of action for material violations of specified foreclosure provisions.  (See *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 157–161 [omission of § 2924, subd. (a)(6), from the provisions listed in § 2924.12 defeats claim for injunctive relief].)

[7] The HBOR statutes cited in this paragraph were amended after the nonjudicial foreclosure proceedings commenced in December 2021.  (Stats. 2024, ch. 311, § 1; Stats. 2022, ch. 452, §§ 31, 32; Stats. 2024, ch. 601, § 3.)  The amendments do not affect our analysis, as the relevant language was not changed.

In sum, the disclosure and notification duties imposed by TILA, RESPA, and the HBOR were owed to Michael as the borrower, not Bernice. " '[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " (*Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1341.)

Bernice acknowledges she was not a borrower on the loan secured by Michael's interest in the Property but asserts she has standing to pursue her claims because the foreclosure affected her interest in the Property. She notes that the foreclosure "introduced a stranger" into the tenancy, led to a partition action to force the sale of her home, and "fracture[d] the unity of title." She further contends she has standing based on her financial contributions to maintaining and preserving the Property.

Bernice has the burden of affirmatively demonstrating error. (*Intengan v. BAC Home Loans Servicing LP*, *supra*, 214 Cal.App.4th at p. 1052.) She has not met this burden here because she presents no relevant authority or facts explaining why cross-defendants owed her a duty under the foregoing statutes. Bare assertions that she has standing to challenge the "wrongful foreclosure" based on her interest in, or contributions to, the Property are insufficient; there must be allegations showing that cross-defendants, through their conduct, invaded her *legally cognizable* interests. (See *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1358–1359 [plaintiffs lacked standing where they failed to "show any legally cognizable interest that [was] harmed by" the alleged wrongdoing]; *In re Marriage of Murchison* (2016) 245 Cal.App.4th 847, 851 [standing requires the "invasion of a legally cognizable interest"]; *Hagen v. Laursen* (1953) 121 Cal.App.2d 379, 385 ["violation of a statute constitutes actionable negligence only as to

those persons for whose benefit or protection the statute was enacted"], disagreed with on other grounds by *Drake v. Dean* (1993) 15 Cal.App.4th 915, 932.)

Further, as cross-defendants point out, a cotenant does not have a legally cognizable interest in the encumbrance or sale of another cotenant's share. (See *Buller v. Buller* (1944) 62 Cal.App.2d 694, 698 [tenant in common has the right to dispose of his or her own undivided share without the knowledge or consent of other cotenants]; *Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 650 [same].) When a cotenant encumbers his interest, the encumbrance does not affect the interests of other tenants, even if it results in the sale of the encumbered interest to a third party. (*Id.* at pp. 650–651; see *Schoenfeld v. Norberg* (1970) 11 Cal.App.3d 755, 765; *Kane v. Huntley Financial* (1983) 146 Cal.App.3d 1092, 1097–1098.) The purchaser of the encumbered interest simply "succeeds to the interest of the debtor and becomes a tenant in common with the remaining owners." (*Dieden*, at p. 651; see *Zieve, Brodnax & Steele, LLP v. Dhindsa* (2020) 49 Cal.App.5th 27, 36.)

Moreover, a co-owner also has an "absolute right" to partition of property absent circumstances inapplicable here. (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493.) Here, the FACC and the judicially-noticeable facts establish that the underlying loan encumbered only Michael's interest in the Property. Thus, that the foreclosure "introduced a stranger into the tenancy" and led to a partition action is insufficient to confer standing on Bernice to challenge the foreclosure.

While Bernice notes that Michael conveyed his interest in the Property to her prior to the foreclosure sale (but several months after foreclosure proceedings were initiated), the HBOR defines "borrower" as a natural person who is "a mortgagor or trustor." (§ 2924.12, subd. (a).) "[U]nder the plain

11

language of the statute, 'borrower' . . . does not include successors-in-interest." (*Marasigan v. Midfirst Bank* (S.D.Cal., May 15, 2023, No. 23-cv-00634-H-MSB) 2023 U.S.Dist. Lexis 85039, at *6, 8; see *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 926 [the trustor under a deed of trust is the borrower].) And, in general, someone who is not a party to the loan lacks standing to bring a claim under RESPA or TILA. (See *Green v. Central Mortgage Co.* (N.D.Cal., Sept. 2, 2015, No. 14-cv-04281-LB) 2015 U.S.Dist. Lexis 117241, at *14–15 [successor in interest did not have standing to bring RESPA claims because she was not the borrower]; *Wilson v. JPMorgan Chase Bank, N.A.* (E.D.Cal., June 25, 2010, No. Civ. 2:09-863 WBS GGH) 2010 U.S.Dist. Lexis 63212, at *17–18 [plaintiff had no standing to bring a TILA claim because she was not a party to the loan contract].)

Because the deed of trust shows that only Michael is the trustor with respect to the loan at issue here, and because Bernice makes no showing that she can assert claims under TILA, RESPA, and the HBOR as Michael's successor in interest, we conclude that Bernice does not have standing to bring claims under those statutory schemes.

Nor has Bernice demonstrated that she could amend the FACC to allege that cross-defendants owed her duties outside of those statutory schemes based on her interest in the Property. Throughout her appellate brief, she alleges that cross-defendants committed fraud, "regulatory evasion," and "procedural irregularities" in the foreclosure, allegations that appear to be based on cross-defendants' conduct as Michael's lender, their misrepresentations regarding whether the Property was owner-occupied, and their alleged duty to provide Bernice "foreclosure notices." Bernice fails to cite any authority other than the HBOR in support of her assertion that her legal rights were affected by cross-defendants' alleged misrepresentations

12

regarding whether the Property was owner-occupied. Bernice also fails to cite any authority for the suggestion that she has standing as a non-borrower to challenge cross-defendants' alleged "regulatory evasion" in connection with the underlying loan. The law appears to be to the contrary. (See, e.g., *Brockington v. J.P. Morgan Chase Bank, N.A.* (N.D.Cal., July 1, 2009, No. 08-cv-05795 RMW) 2009 U.S.Dist. Lexis 56622, at *7–9 [holding plaintiff who was not a party to the loan transaction had no standing as an alleged "equitable owner" of the property to challenge defendant's conduct in connection with the loan, or to assert a claim for concealment of facts in the transaction]; *Bleavins v. Demarest* (2011) 196 Cal.App.4th 1533, 1542 ["Bleavins lacks standing to assert any claim concerning the contractual relationship between Allstate and the Dannenbaums . . . because he is not a party to the insurance policy"].)

As for her claim that cross-defendants violated their duty to provide her foreclosure notices, the only other notice statute that Bernice alleges she is subject to is inapplicable here.[8] Section 2924b, which is not a part of the HBOR (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 314 (*Morris*)), requires the trustee to send notice of the foreclosure sale and a copy of the notice of default to the following parties: (1) the "trustor," (2) a successor in interest whose interest was "recorded in the office of the county recorder . . . *prior to the recording date of the notice of default*," and (3) "each

---

[8] Cross-defendants argue that because Bernice did not raise this claim in the trial court, she cannot raise it here. Not so. Where a demurrer has been sustained without leave to amend, a plaintiff may assert a new legal theory on the sufficiency of the complaint for the first time on appeal. (*Dudley v. Dept. of Transportation* (2001) 90 Cal.App.4th 255, 259.) Moreover, a plaintiff may show how a complaint can be amended for the first time on appeal. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

person whose name and address are set forth in a duly recorded request therefor." (§ 2924b, subds. (b)(1)&(2), (c)(1)&(2)(A), italics added.) The latter category refers to those persons who have filed a statutory request for notice in the office of the recorder. (*Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.* (2009) 180 Cal.App.4th 1090, 1097–1098, citing § 2924b, subd. (a).) Bernice is not the trustor, and she has not suggested that she could amend her complaint to include allegations that she filed a request with the office of the recorder. Moreover, the attachments to the FACC show that Bernice acquired Michael's interest several months *after* the notice of default was recorded. She therefore was not entitled to statutory notice in connection with the foreclosure.

Bernice nonetheless urges us to impose a duty on cross-defendants based on the factors in *Biakanja v. Irving* (1958) 49 Cal.2d 647. The *Biakanja* factors are used by courts to determine whether a defendant owed a duty of care to third parties not in privity with the defendant. (*Id.* at pp. 648–651.) Because Bernice's tort claims arise from cross-defendants' statutory duties, "not from an asserted common law duty," we need not apply the *Biakanja* factors here. (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 534.) Moreover, "the Supreme Court has said that the Legislature intended to cover the entire subject area of nonjudicial foreclosures by statute and leave nothing for the courts." (*Diediker v. Peelle Fin. Corp.* (1997) 60 Cal.App.4th 288, 295, citing *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285.) As such, "the duties among and between the pertinent parties" in a nonjudicial foreclosure proceeding are established by statute. (*Turner*, at p. 535; see *Diediker*, at pp. 294–295 [rejecting appellants' argument that courts should impose a duty on the trustee owed to "all future purchasers of property"].)

14

Accordingly, Bernice has not shown that she can allege facts establishing that cross-defendants owed her a duty conferring standing to allege claims for negligence or negligent misrepresentation against them in connection with the foreclosure or the underlying loan.

The authorities on which Bernice relies are distinguishable and do not persuade us to reach a different conclusion. In *Morris*, *supra*, 78 Cal.App.5th 279, the homeowner asserted violations of the HBOR, but she was the borrower on the loan encumbering her real property.[9] (*Id.* at pp. 286–287.)

In *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, the homeowners' signatures were forged on a promissory note and deed of trust for a loan secured by their property. (*Id.* at p. 29.) The issues on appeal concerned the lender's cross-claims against the escrow company involved in the loan transaction and the individual who notarized the deed of trust. (*Id.* at pp. 28–29.) In addressing the parties' contentions on appeal, the court first concluded that the cross-defendants had "limited standing to raise irregularities regarding the foreclosure proceedings under the doctrine of mitigation of damages" because they were claiming that the lender had failed to mitigate its damages. (*Id.* at p. 33.)

*Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.*, *supra*, 180 Cal.App.4th 1090 concerned a lienholder's claim against the foreclosing trustee for breach of its statutory duties based on the trustee failing to search for possible creditors before distributing the excess proceeds

---

[9] Several other cases Bernice cites likewise concerned claims brought by borrowers or the public administrator for the estate of the borrower. (See *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580; *Stephens, Partain & Cunningham v. Hollis* (1987) 196 Cal.App.3d 948, 950–951; *Estate of Yates* (1994) 25 Cal.App.4th 511, 521–522; *In re Cedano* (9th Cir. 2012) 470 B.R. 522, 525, 529.)

from a nonjudicial foreclosure sale.  (*Id.* at pp. 1095–1096.)  The appellate court held that the foreclosing trustee did not have a duty to search for judgment lienholders before distributing excess sale proceeds to the trustor. (*Id.* at pp. 1103–1105.)

And in *Asisten v. Underwood* (1960) 183 Cal.App.2d 304, the plaintiff was misled into signing a quitclaim deed transferring title of his house to his friend.  He brought a claim to cancel the deed and quiet title the property based on the fraudulent representation that the quitclaim deed was a promissory note.  (*Id.* at p. 307.)  His friend then sold the property to the defendants.  (*Id.* at pp. 307–308.)  The questions on appeal were whether the evidence supported the trial court's fraud findings, which would render the deed from the plaintiff to his friend voidable, and whether the defendants were innocent purchasers for value.  (*Id.* at p. 309.)

None of the foregoing authorities involve the duties, if any, owed by a lender, trustee, or beneficiary under a deed of trust to a non-borrower cotenant.  Nor do they concern a non-borrower cotenant's legal rights or a cotenant's standing to challenge the foreclosure of another cotenant's property share.

Lastly, Bernice cites *Turner v. Seterus, Inc.*, *supra*, 27 Cal.App.5th 516, where a husband and wife asserted a wrongful foreclosure claim against the lender.  (*Id.* at p. 520.)  The husband's name was not on the deed of trust, but he argued that he had contributed monthly payments to the home loan, thereby converting what was once his wife's separate property into community property and vesting in him an interest in that property.  (*Id.* at pp. 523–525.)  The court agreed, holding that under the complaint's allegations, the community had an interest in the property, so the husband had standing to pursue tort causes of action "to the extent those causes of

16

action alleged that [defendant's] conduct resulted in the loss of property—and, as a result, the community's interest therein." (*Id.* at p. 525.)

In *Turner*, the plaintiffs were alleging that their home was lost as a result of the defendants' failure to allow the husband, acting on behalf of the wife, to cure the plaintiffs' default. (*Turner v. Seterus, Inc.*, *supra*, 27 Cal.App.5th at pp. 520–522.) The appellate court concluded that the complaint sufficiently alleged a statutory duty to accept the plaintiffs' full tender of the amount in default. (*Id.* at pp. 534–535.) In contrast, here, Bernice has not alleged facts demonstrating that cross-defendants owed her any statutory duties in connection with the foreclosure or that she lost her home as a result of their failure to comply with their statutory duties. (See *Morris*, *supra*, 78 Cal.App.5th at p. 294 [to challenge a foreclosure sale " 'based on a procedural irregularity,' . . . 'the plaintiff must show . . . that there was a failure to comply with the procedural requirements for the foreclosure sale' "].)

Thus, while we sympathize with Bernice, we cannot conclude on this record that the foreclosure sale was the result of cross-defendants' invasion of her legally cognizable interests. We therefore affirm the sustaining of the demurrers without leave to amend on the ground that Bernice does not have standing to assert tort claims against cross-defendants for their role in the foreclosure.

### D. Bernice Lacks Standing to Assert a UCL Claim.

Bernice's third cause of action for violation of the UCL was predicated on the same misconduct giving rise to her other causes of action. The trial court concluded that Bernice lacked standing to assert her UCL claim because any harm she incurred was caused by a breach of duties owed to other parties.

17

To have standing in an action under the UCL, a plaintiff "must demonstrate some form of economic injury" that occurred as a result of the unfair competition. (*Kwikset Corp. v. Superior Court*, *supra*, 51 Cal.4th at pp. 323, 326, superseded by statute on another ground as stated in *Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 594, fn. 2.) The UCL defines unfair competition as "any unlawful, unfair, or fraudulent business or practice." (Bus. & Prof. Code, § 17200.)

While Bernice contends the UCL incorporates federal standing principles, the standing requirements under the UCL are far more stringent than the federal standing requirements. " 'Whereas a federal plaintiff's "injury in fact" may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's "injury in fact" specifically involve "lost money or property." ' " (*Kwikset Corp. v. Superior Court*, *supra*, 51 Cal.4th at p. 324.) Moreover, there must be a showing that the injury was "caused by" the unfair competition. (*Id.* at p. 326.)

We agree with the trial court that Bernice failed to allege that she lost money or property as a result of cross-defendants' alleged misconduct in connection with the foreclosure. The foreclosure of a 50 percent interest in the Property and the subsequent partition action are "the result of [Michael's] default, not the alleged conduct of [cross-]defendants." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 614; see *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 522–523 [nonjudicial foreclosure proceedings triggered by default are not economic injury caused by UCL violations, where default occurred *prior to* allegedly unlawful or unfair acts (italics added)], disapproved of on other grounds by *Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at p. 939, fn. 13.)

18

On appeal, Bernice also relies on BBV's allegedly unlawful conduct in originating the underlying loan without the required license, but she makes no showing that she can allege facts supporting a causal link between that violation of law and her alleged economic injury. (See *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [conclusory averments without legal argument or citation to the record disregarded on appeal].) We do not see how she would be able to allege such a link since Michael was entitled to take out a loan encumbering his interest in the Property without her consent. (*Dieden v. Schmidt, supra*, 104 Cal.App.4th at p. 650.) Bernice therefore faced the same risk of foreclosure regardless of whether BBV complied with licensing laws. "When a UCL action is based on an unlawful business practice, . . . a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice that does not otherwise affect the party. . . . [T]here must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." (*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1099.)

Finally, Bernice notes that she seeks "more than just personal recovery" under the UCL; she is also seeking public injunctive relief. Her claim for public injunctive relief under the UCL must fall with her claim for private relief since public injunctive relief "is a *substantive statutory remedy* that the Legislature, through the UCL, . . . has made available to those . . . who meet the statutory standing requirements for filing a private action." (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 965, 958–959.)

19

We thus conclude Bernice lacks standing to assert any claims challenging the foreclosure proceedings.[10]  In sum, the trial court did not err in sustaining cross-defendants' demurrers without leave to amend.

### III.  DISPOSITION

The judgments are affirmed.  Respondents to recover costs on appeal.

---

[10] Because we find that Bernice lacks standing to assert claims challenging the foreclosure proceedings, we do not address whether the FACC alleges facts sufficient to state a cause of action.  (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.)  Nor do we need to address Bernice's argument that the trial court abused its discretion in denying her leave to amend her FACC to add allegations regarding cross-defendants' alleged misclassification of the loan BBV issued to Michael, as she has not demonstrated that she would have standing to bring such claims as a non-borrower.

 

                       _____

                       Langhorne Wilson, J.


WE CONCUR:


_____

Banke, Acting P. J.


_____

Smiley, J.


A170257

21